REA RUBINSTEIN *vs.* BENJAMIN RUBINSTEIN.

Worcester.    February 7, 1946. — May 15, 1946.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Marriage and Divorce*, Jurisdiction, Foreign divorce, Desertion, Failure to support, Stipulation. *Jurisdiction*, Divorce proceedings. *Domicil. Public Policy.*

A special appearance attacking jurisdiction, filed by a wife in a divorce proceeding brought by her husband in a Nevada court, followed by her being defaulted "for failing to appear" and the granting of a divorce, were not such an actual litigation and determination of the jurisdictional facts in the Nevada proceeding as to preclude an inquiry into those facts in a subsequent proceeding in a Massachusetts court involving the validity of the Nevada divorce.

A husband's desertion of his wife could not continue after he acquired a divorce from her in another State, if that divorce was valid.

On appeal from a decree based on findings by a judge of probate that a husband had acquired a domicil in Nevada and that a court of that State had jurisdiction to grant him a divorce, conclusions that he had not acquired such a domicil and of lack of such jurisdiction were required on reported evidence showing that he left Massachusetts, where he and his wife had always had their matrimonial domicil, not without intention to return here but because of a contempt proceeding brought by his wife for his failure to obey a separate support decree;

that he went to Nevada and stayed there until the divorce was granted; that he then went to New York where he lived until certain financial questions between the parties had been adjusted by his father; and that shortly thereafter he returned to Massachusetts to live.

A proceeding for separate support on the grounds of desertion and "cruelty," brought by a wife within three years after her husband deserted her, precluded her obtaining a divorce from him on the ground of desertion.

A stipulation by the parties to a divorce case brought by a wife, that she was entitled to a divorce on a specified ground unless a foreign divorce previously obtained by the husband was a bar, must be vacated as against public policy where the foreign divorce was adjudged invalid but the existence of the specified ground was not proved.

An allegation in a libel for divorce by a wife, that the husband "being of sufficient ability did not provide suitable support for libellant," fell short of the requirements for that ground of divorce set forth in G. L. (Ter. Ed.) c. 208, § 1.

LIBEL, filed in the Probate Court for the county of Worcester on February 20, 1945.

The case was heard by *Atwood*, J.

*L. Rubin*, for the libellant.

*P. J. Murphy*, for the libellee.

WILKINS, J. This libel for divorce, filed February 20, 1945, in the Probate Court for Worcester County, alleges desertion and other grounds and seeks custody of a minor child. The answer contains a denial and sets up that on that date the libellant was not the wife of the libellee, because he had obtained a decree of divorce at Reno, Nevada, on March 28, 1938. At the hearing it was agreed that the libellant was entitled to a decree for desertion unless the Nevada divorce was a bar. From a decree reciting that the parties "are not now husband and wife, having been divorced in another jurisdiction," and dismissing the libel, but awarding custody, the libellant appealed. The judge made a report of the material facts found by him. G. L. (Ter. Ed.) c. 215, § 11. The evidence is reported. It is our duty to examine the evidence and to decide the case on our own judgment. Questions of fact as well as of law are open for our consideration. *Vergnani* v. *Guidetti*, 308 Mass. 450, 455. We can find facts not expressly found by the judge, and if we are convinced that he was plainly wrong, we can find facts contrary to his findings. *Lowell Bar Association*

v. *Loeb*, 315 Mass. 176, 178. *Malone* v. *Walsh*, 315 Mass. 484, 490. *Jurewicz* v. *Jurewicz*, 317 Mass. 512, 513–514.

The parties were married in Boston on August 22, 1926, and lived together in Worcester until 1933. They have one child, a daughter born April 5, 1928. In 1934, at a time when a cause of divorce for desertion had not accrued under G. L. (Ter. Ed.) c. 208, § 1, the wife filed a petition for separate support in the Probate Court for Worcester County, alleging desertion and "cruelty," and on May 1, 1934, a decree was entered to the effect that she was living apart from the husband for justifiable cause, and orders relating to custody and payment for support were made. That decree, which did not set forth the grounds on which it was based, was never modified, but a petition for modification was heard and dismissed on March 25, 1935, while a "motion to rehear case" was filed by the husband in March, 1937, but never heard.

On January 29, 1938, the husband filed a complaint for divorce on the ground of extreme cruelty in the Second Judicial District Court of the State of Nevada in and for the County of Washoe. It alleged that the husband "is now, and has been, for more than six weeks immediately preceding the commencement of this action, a bona fide resident of Washoe County, Nevada, and that he is now and has been during all of the aforesaid time, actually, physically and corporeally present and residing in said County and State." The complaint also contained prayers that custody of the daughter be awarded to the wife, and that the husband be ordered to pay $5 a week for the support of the child. In an "affidavit for publication of summons" signed and sworn by the husband, the wife was alleged never to have resided in Nevada, and was described as residing in the "City of Roxbury, State of Massachusetts." The wife was served with a copy of the complaint and summons in Boston by a deputy sheriff of Suffolk County. Thereupon through her Massachusetts attorney she filed a special appearance, which was accompanied by a prayer that the action be dismissed for lack of jurisdiction, or in the alternative that she be "given an opportunity to get in touch with an attorney

in Reno, to protect" her "rights" and to present "said matter to the Court." Also accompanying the special appearance were allegations that the husband was a resident of Worcester; that "if he was in Reno, Nevada, on the date of the filing of the complaint in this action, he was there for the sole purpose of obtaining a divorce in the State of Nevada"; that on May 1, 1934, the Probate Court for Worcester County found that the wife was living apart from the husband for justifiable cause, and ordered the husband to pay $7 a week for the support of the wife and child; that that order was still in force; that on December 4, 1937, the husband was served in hand in Worcester with a summons on a contempt petition for failure to comply with that order; that since January 29, 1938, the date of the Nevada complaint, several envelopes addressed to the wife bearing the return address, "B. Rubinstein, 19 Mendon Street, Worcester, Mass.," had been received; and that the husband had fraudulently concealed his domicil to obtain a divorce in Nevada. On March 28, 1938, the wife was defaulted in Nevada in open court "for failing to appear," and on the same date a decree was entered there granting a divorce and making orders in conformity with the prayers respecting custody and support. That decree recited that "she has failed to appear and answer within the time allowed by law, or at all."

"In general, it is well established that jurisdiction to grant a divorce must be based upon the domicil of at least one of the parties, and that the jurisdiction of a State which has undertaken to grant a divorce may be made the subject of inquiry elsewhere." *Cohen* v. *Cohen, ante,* 31, 34, and cases cited. The husband contends, however, that the wife cannot question the jurisdiction of the Nevada court, because the filing of the special appearance brought the case within the principle of *Davis* v. *Davis,* 305 U. S. 32. We are not impressed with this contention. We have interpreted the *Davis* case "as resting on the basis that the jurisdictional facts were actually litigated and determined to exist in the court granting the divorce." *Cohen* v. *Cohen, ante,* 31, 35. *Bowditch* v. *Bowditch,* 314

Mass. 410, 416. The filing of the special appearance followed by nothing more than the entry of a default "for failing to appear" was not an actual litigation and determination of the jurisdictional facts. See *Davis* v. *Davis,* 305 U. S. 32, 42; *Schaeffer* v. *Schaeffer,* 128 Conn. 628, 633.

The main question is presented by the probate judge's findings as to domicil. He found "as the most material fact in this case that he [the husband] actually acquired a domicil in Reno from December 15, 1937, to the time of filing the complaint and for some months later (until April 3, 1938)." The judge found, "as basis for the above facts, that he left Massachusetts with no intention to return, but to stay away indefinitely and perhaps permanently. This is borne out by the fact that he never returned to Massachusetts until February, 1940, and then for a special reason and not because he intended to return. While in Reno he intended to make it his home for some time — principally because he thought the law so required — but having no intention at that time to live elsewhere. He had some idea of looking for business in his line, the purchase and sale of wool, or rather brokerage of contracts therefor on which he received a commission. There were large wool growing areas in this part of the west, and he sought and did some business. I find, if material, that his purpose and intent in leaving Massachusetts and going to Reno and acquiring a domicil, as above found, were not laudable, but the contrary. He went for the purpose of evading his obligation to support his wife and child and [in order not] to obey the decree of this court for such support, and for the further purpose of obtaining the divorce. He left soon after being served with process from this court on a complaint for contempt for not making payments ordered by said decree."

We summarize other findings of the probate judge. The husband left Worcester about December 12, 1937, and arrived in Nevada "on or about" December 15, 1937. About ten days after he left, a capias for his arrest was issued in the separate support case. He left Reno on or about April 3, 1938, and went to New York city, where he

lived until February, 1940. He then returned to Worcester to "his father's home" and has lived there since. Late in 1939 his aged father urged him to return to Worcester to be with him in his declining years. A brother also urged him to return. "An apparent reason for the absence of the libellee is the fact that he was then paying his wife nothing, the contempt petition was pending, and a capias outstanding." On or about December 6, 1939, the father for $700 obtained a release of all demands for arrears on the separate support decree and a surrender of the capias, and agreed that thereafter $7 a week would be paid. "I think the above facts material as some indication of the libellee's reasons for leaving Worcester and for his return, which in turn have a bearing on the finding of domicil in Nevada. I find that the libellee had no intention of paying anything or returning to Massachusetts and would not have done so except for the fact that the father urged him and made this settlement with the libellant." "I do not find that the testimony of either one [of the parties] was frank and truthful."

In a "supplementary report of findings of material facts" the probate judge stated: "I find that the libellee deserted the libellant on or about December 7, 1933, and that this desertion continued, without justification, up to the filing of the present libel." This finding is inconsistent with the ruling that he was validly divorced in Nevada on March 28, 1938. Unless the wife continued to be in law his wife, the state of desertion which, it was found, began on or about December 7, 1933, could not have existed after the granting of the divorce in Nevada, if that divorce was valid, nor could it have continued "without justification" until February 20, 1945, the date of filing the present libel.

In accordance with our duty we proceed to a consideration of the evidence, and we do so in the light of the finding that the testimony of the husband was not found to be "frank and truthful." See *Berman* v. *Coakley,* 257 Mass. 159, 164. A certificate of the city clerk of the city of Boston discloses that the husband was born in Worcester and lived

there on August 22, 1926, the date of his marriage, at which time he was thirty years of age. He testified that he lived in Worcester until December, 1937. There is nothing to show that he ever lived anywhere else before that time. We infer that the only place the parties ever lived together as husband and wife was Worcester. On April 12, 1945, the date of the hearing, he resided and had his office as a travelling salesman at his father's house at 19 Mendon Street, Worcester. He testified that in February, 1940, he came back to Worcester; that he came back home where he had always lived; and that he always considered 19 Mendon Street as his home. We attribute no weight to his testimony that "My home is where I hang my hat." He travelled out of 19 Mendon Street. With respect to his going to Nevada he testified as follows: He left Massachusetts the "first part of December." He left never intending to come back. He first went to New York about December 12, and remained two days. He then went to Philadelphia for one day, to Chicago for one day, to Omaha for two days, to Cheyenne for five days, and then to Reno, arriving "around" December 15. He went to Reno to do business, and while he was there he thought it would be a good idea to get a divorce. He was a stranger in Reno, and had no friends in that city. He did a "little" wool business in Nevada. On the way out he did a "little" business in New York, but none in Cheyenne. He had "better luck" in Nevada. He was out on the road on business, and when near Chicago he decided instead of coming back to go west to buy some wool. Business conditions were quiet in Worcester, and the west is the wool growing country. He did business not in Reno, but in other parts of Nevada. He had no office at any place in the west. He lived "at several hotels." Following the divorce decree on March 28, 1938, he was in California on April 1 and 2, and returned to Reno for one day. He left Reno for good on April 3, 1938. He testified that he went to New York to make it his home. His place of abode after reaching New York, where he lived at Richmond Hills, did not appear. He did "some" business in New

York. He was "around New York, Philadelphia." As to his reasons for returning to Worcester in February, 1940, he testified that he did not want to come back; that his brother argued with him that he should come back as his father was an old man; and that he was notified by his father about the settlement of the contempt proceeding.

On the evidence we find that the husband was not domiciled in Nevada at any time; that the Nevada court was without jurisdiction to grant the divorce; that he was absent from the Commonwealth as a fugitive from justice; that he left the Commonwealth because of the citation for contempt in the separate support case; that a capias for his arrest was issued December 21, 1937, in that case; that he returned within two months after December, 1939, when the financial questions involved therein had been adjusted; and that, contrary to the finding of the judge, he did not leave the Commonwealth "with no intention to return." This case falls within the authority of such cases as *Bowditch* v. *Bowditch*, 314 Mass. 410, *Coe* v. *Coe*, 316 Mass. 423, *Cohen* v. *Cohen*, *ante*, 31, *Williams* v. *North Carolina*, 325 U. S. 226, and *Esenwein* v. *Commonwealth*, 325 U. S. 279.

We now consider whether a divorce on the ground of desertion should be granted. Notwithstanding that the parties agreed that, unless the Nevada divorce was a bar, the wife would be entitled to a decree of divorce for desertion, and notwithstanding that the judge found that the wife had been deserted on or about December 7, 1933, and that the desertion had continued until the filing of the present libel, it is plain that a divorce on that ground cannot be granted. The petition for separate support (G. L. [Ter. Ed.] c. 209, § 32) filed in 1934 alleged "cruelty," as well as desertion. We have already noted that at the time of filing that petition a cause of divorce for desertion had not accrued within the provisions of G. L. (Ter. Ed.) c. 208, § 1. And it has been held that the overt act of filing a libel on the grounds of cruel and abusive treatment necessarily shows a legal intention on the part of the libellant not to live with

the libellee. *Najjar* v. *Najjar*, 227 Mass. 450. *Craskin* v. *Craskin*, 288 Mass. 56. See *Espinola* v. *Espinola*, 273 Mass. 450, 452. A petition for separate support by a wife alleging that she was living apart for justifiable cause by reason of cruel and abusive treatment stands no different in this respect from a libel for divorce. The stipulation must be vacated, since its effect would enable the parties instead of the judge to determine whether the libellant had a good cause for divorce for desertion. That is against public policy. *Wolkovisky* v. *Rapaport*, 216 Mass. 48, 50–51. See *Murray* v. *Murray*, 255 Mass. 19, 22; *French* v. *McAnarney*, 290 Mass. 544, 546–548; *Sheffer* v. *Sheffer*, 316 Mass. 575. The finding of the judge that there was a desertion was plainly wrong.

The present libel also contains allegations of cruel and abusive treatment and that the husband "being of sufficient ability did not provide suitable support for libellant." The latter allegation falls short of the statutory requirements, which are that "the husband, being of sufficient ability, grossly or wantonly and cruelly refuses or neglects to provide suitable maintenance." G. L. (Ter. Ed.) c. 208, § 1. *Peabody* v. *Peabody*, 104 Mass. 195. *Holt* v. *Holt*, 117 Mass. 202. *Keenan* v. *Keenan*, 219 Mass. 107.

While the record fails to contain any evidence of cruel and abusive treatment, we are uncertain whether such testimony was not withheld by reason of a limitation of the issues by the judge which led to the making of the stipulation. Consequently, we feel that the door should be left open for a hearing of the libel on this ground.

The decree is reversed. The case is to be further heard on the issue of cruel and abusive treatment. Costs and expenses of this appeal may be allowed to the libellant or her counsel in the discretion of the Probate Court. G. L. (Ter. Ed.) c. 208, § 38, as appearing in St. 1933, c. 288.

*So ordered.*