KATHARINE C. COE *vs.* MARTIN VAN BUREN COE.

Worcester.    February 6, 7, 1946. — October 30, 1946.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Marriage and Divorce*, Jurisdiction, Foreign divorce, Separate mainte-
nance.   *Probate Court*, Rehearing, Acting judge, Costs.   *Domicil.*
*Estoppel.*   *Jurisdiction*, Divorce proceedings.   *Evidence*, Interroga-
tories, Presumptions and burden of proof.   *Words*, "Hearing."

A rescript of this court reversing decrees of a Probate Court and ordering
the case "to stand for hearing" did not preclude a subsequent hear-
ing by a judge other than the judge who had originally heard the case.
A judge of probate who, upon being designated under G. L. (Ter. Ed.)
c. 217, § 8, as appearing in St. 1937, c. 408, § 5, to act in the Probate
Court of another county in the absence of the judge thereof, had heard
counsel on various "preliminary matters" in a case without the pres-
entation of evidence, properly heard the case on the merits at a con-
tinued hearing several months later, although the judge of the court
was then available.
It was not plainly wrong to find that neither a husband nor his wife
acquired a domicil in Nevada where each, being domiciled in Massa-
chusetts, went to Nevada for the purpose of securing a divorce there,
remained there for a short time until the conclusion of divorce pro-
ceedings between them there and then returned to Massachusetts to
live.
A Nevada court had no jurisdiction to grant a divorce where neither of
the parties had a domicil in that State, although one of them had
resided there for six weeks before the institution of the divorce pro-
ceedings and both were physically present and before the court there
at the time of the granting of the divorce.
There was no such genuine litigation and determination of the jurisdic-
tional fact of residence in a Nevada divorce proceeding as to preclude
an inquiry into that fact in a subsequent proceeding in a Massachu-
setts court, where in the Nevada proceeding one party collusively
admitted allegations by the other as to his residence there for the
required period.
A woman seeking separate maintenance from her alleged husband in a
Massachusetts court was not precluded from relying on the invalidity
of a divorce previously obtained by her from him in a Nevada court
in violation of G. L. (Ter. Ed.) c. 208, § 39.
A wife's petition for modification of a decree for separate maintenance
was not barred by an agreement as to financial matters made by her
with her husband in the course of a divorce proceeding in Nevada
which had been instituted after the decree for separate maintenance
and in which she was granted a divorce invalid in Massachusetts.

Deterioration of a wife's physical condition to a point where she was unable even to do housework, occurring after a decree for separate maintenance, would have been sufficient to support a modification of the decree ordering an increase of payments reasonably within the husband's means, but a decree of modification was reversed because it was based also on a plainly wrong finding as to the husband's financial worth.

A party introducing in evidence answers to interrogatories propounded by him to an adverse party is bound to the truth of facts stated in those answers if they are not contradicted by other evidence.

A decree ordering a husband to pay his wife a sum of money for her use in maintaining a petition for modification of a decree for separate maintenance and in defending a petition by him for revocation of the decree for separate maintenance was proper under G. L. (Ter. Ed.) c. 209, § 33, as appearing in St. 1933, c. 360.

PETITIONS, filed in the Probate Court for the county of Worcester on May 22, 1943, August 30, 1943, and September 7, 1943, respectively, described in the opinion.

The hearing following the decision by this court reported in 316 Mass. 423, was by *Stapleton,* J.

*S. Perman,* (*G. H. Mason* with him,) for the respondent.

*Nunziato Fusaro,* for the petitioner.

WILKINS, J. The marital controversies between Katharine C. Coe and Martin Van Buren Coe (hereinafter referred to as Mrs. Coe and Mr. Coe, respectively) reach this court for the third time. In 313 Mass. 232, we affirmed a decree of the Probate Court of Worcester County, dated March 25, 1942, awarding Mrs. Coe $35 a week for her separate support. On May 22, 1943, Mrs. Coe filed a petition for contempt against Mr. Coe for failure to comply with that decree, and on August 30, 1943, she filed a petition (amended October 21, 1943) for modification of that decree. To the petition for modification Mr. Coe filed a plea in bar based upon certain Nevada divorce proceedings. On September 7, 1943, he filed a petition to revoke the separate support decree. In 316 Mass. 423, because Mrs. Coe had been denied the right to introduce evidence to show that the Nevada court did not have jurisdiction and that there had been a violation of G. L. (Ter. Ed.) c. 208, § 39, we reversed decrees dismissing her petitions and a decree allowing Mr. Coe's petition to revoke, and the rescript ordered the cases

"to stand for hearing in conformity with the opinion."
The rescript interpreted in the light of the opinion (*E. Kronman, Inc.* v. *Bunn Bros. Inc.* 265 Mass. 549, 552) did not mean that only the judge who had heard the cases could conduct the hearing. The words "further hearing" were not used, as had been done in *Woodworth* v. *Woodworth*, 271 Mass. 398, 400; see 273 Mass. 402, 406–407. Even those words, "unless expressly limited, ordinarily import a new trial of those matters as to which the new or further hearing is to be had." *C. W. Hunt Co.* v. *Boston Elevated Railway*, 217 Mass. 319, 320–321.

After rescript the three petitions, together with a petition of Mrs. Coe for counsel fees and expenses, were heard by a judge of probate of Hampden County designated under G. L. (Ter. Ed.) c. 217, § 8, as appearing in St. 1937, c. 408, § 5. On May 21, 1945, decrees were entered dismissing the petition for contempt; modifying the decree of March 25, 1942, by ordering Mr. Coe to pay for the support of Mrs. Coe $5,000 forthwith and $100 weekly; requiring Mr. Coe to pay to Mrs. Coe $1,000 for her use in maintaining her petition for modification and in her defence in the matter of the petition for revocation; and dismissing the petition for revocation. On May 31, 1945, Mr. Coe appealed from the decree for modification, the decree for $1,000 "for counsel fees," and the decree dismissing the petition for revocation. The judge filed a report of the material facts found by him. G. L. (Ter. Ed.) c. 215, § 11. The evidence is reported. *Shattuck* v. *Wood Memorial Home, Inc.* 319 Mass. 444, 445–446. *Rubinstein* v. *Rubinstein*, 319 Mass. 568, 569.

1. We first consider a contention of Mr. Coe that the judge of probate of Hampden County who entered the decrees was without power and authority to act in these cases. On July 7, 1944, the first judge of probate of Worcester County (who was not the judge who theretofore had heard the cases) made the following designation under G. L. (Ter. Ed.) c. 217, § 8, as appearing in St. 1937, c. 408, § 5: "I request Honorable Thomas H. Stapleton, judge of probate, in and for the county of Hampden, to perform

part of the judicial duties of this court by holding a simultaneous session of this court at the court house in Worcester, at times and places to be designated by said aforesaid judge of probate, by reason that neither of the judges of probate are available to hear said case." In view of later occurrences it is not clear what was meant by "said case." On July 10, 1944, there was a hearing, hereinafter referred to, concerning the present cases before the acting judge of probate previously designated. Although the request of July 7, 1944, had nothing to do with these cases, through error the certification of designation of the judge of probate of Hampden County as acting judge was entered under the docket number of these cases. This was later changed so that the designation was docketed with a new number under the name of the judge designated. On October 19, 1944, Mr. Coe filed a motion that the designation of the judge of probate of Hampden County to hear the cases be vacated. There were numerous grounds assigned for the motion, the chief of which was that the hearing should be before the judge of probate of Worcester County who had previously heard the cases. On January 4, 1945, the motion was denied by the first judge of probate of Worcester County, "it appearing that the certification referred to was entered on the docket in this case by mistake and inadvertence and has now been expunged." On January 18, 1945, the judge who had originally heard the cases assigned them for hearing before the judge of probate of Hampden County who had been designated as set forth above. On January 22, 1945, Mr. Coe filed a motion to revoke the assignment. On January 31, 1945, the judge who had originally heard the cases denied the motion by a decree which contained in substance the following findings: While Judge Wahlstrom, who had heard all previous matters, was "away on summer vacation and thus unavailable," the designation was made of Judge Stapleton, who sat on July 10, 1944, and heard and decided "four preliminary matters." At that hearing "various matters concerning the case were discussed and counsel submitted documents to said court so that he might become familiar

with what had transpired in the case, and a discussion was had regarding a continuance of the hearing. . . . [P]ractically one entire day was devoted to matters concerning said case. . . . [B]oth Honorable Thomas H. Stapleton and counsel for both parties believed that they had commenced hearings in said case and that the matter was therefore continued generally for further hearing before Honorable Thomas H. Stapleton. This court therefore finds that said case is now before said Honorable Thomas H. Stapleton for hearing on all matters pending." Mr. Coe appealed.

That the foregoing findings were not erroneous is clear from an examination of the stenographic report of the proceedings on July 10, 1944, contained in the record, which does not sustain the numerous contentions of Mr. Coe. It cannot rightly be said that the cases were not properly before the judge of probate of Hampden County on February 5, 1945, and later dates, when they were heard to a conclusion on the merits. Because of what had occurred on July 10, 1944, when the original judge was unavailable, even though no witnesses were called, it was of no consequence that he was available on February 5, 1945, and later dates. A contrary ruling was not required by reason of proceedings (naturally not to be found in this record) on January 11, 1945, before a single justice of this court. We hold to be unfounded not only the argument that the judge of probate of Hampden County was selected by counsel for Mrs. Coe to hear the cases, but also the contention that there was impropriety in the assignment of that judge to hear these cases. There was compliance in all respects with G. L. (Ter. Ed.) c. 217, § 8, as appearing in St. 1937, c. 408, § 5.

2. We next consider the decree dismissing Mr. Coe's petition for revocation of the separate support decree of March 25, 1942. The petition contains allegations that "by virtue of a decree dated September 19, 1942, duly entered in the First Judicial District of the State of Nevada the said Katharine C. Coe was awarded a judgment dissolving the marriage between the said Katharine C. Coe and your

petitioner and they are no longer husband and wife," and that since the decree "the conditions and relations between your petitioner and said Katharine C. Coe have become so materially altered as to require revocation or modification of said decree." There are prayers that the parties be adjudged to be "no longer husband and wife," that the petition for contempt be dismissed, and for such further relief as the court "deems equitable." Among the material facts found by the judge are the following: The parties were married in New York, New York, on May 15 or May 16, 1934, at which time they were residents of, and domiciled in, Worcester. They thereafter resided in Worcester. In May, 1942, Mr. Coe left Worcester and went to New York city, where he had had an apartment since 1940, but no domicil. He left New York with one Dawn Allen, and on June 10, 1942, arrived in Reno, Nevada. On July 27, 1942, he filed a complaint for divorce in the First Judicial District Court of the State of Nevada in and for the County of Ormsby. Following service of the summons upon her in Worcester Mrs. Coe on August 25, 1942, arrived in Reno. She lived for a few days at a hotel and then hired a room elsewhere. She had never been in Nevada before. On August 28, 1942, she filed a demurrer to the complaint. On September 19, 1942, she filed an answer and a cross complaint, and on the same date a decree of divorce was entered in her favor on her cross complaint. The decree "further ordered that the written agreement entered into by the plaintiff and defendant herein on the 16th day of September, 1942, be, and the same is hereby ratified, approved and confirmed, and adopted by the court as a part of its judgment herein, and each of the parties is hereby ordered and directed to comply with the terms thereof." In accordance with the decree Mrs. Coe received $7,500 outright as provided in the agreement. The agreement also provided for the payments of $35 weekly to Mrs. Coe, but such payments have not been made to her. Mr. Coe paid her counsel $1,000. Immediately after the divorce hearing Mr. Coe and Dawn Allen went through a marriage ceremony performed by the judge who granted the divorce decree. "I find on all the evidence that the re-

spondent Coe never intended to change his residence from Massachusetts. I find that his claim of residence in Nevada was a fraud." Mrs. Coe "went to Nevada for the purpose of defending herself against her husband's action for divorce and also to obtain a divorce. This while she was still a resident of, and domiciled in, Massachusetts. I find that she went to Nevada to obtain a divorce for a cause which occurred in Massachusetts while the parties resided in Massachusetts. . . . I find that the respondent, Mr. Coe, went to Nevada to seek a divorce. . . . I find he had no grounds for a divorce on any incident that happened in Massachusetts or elsewhere. I find that neither he nor Mrs. Katharine C. Coe had a bona fide residence in Nevada according to the law of Nevada. I find that the Nevada court did not have jurisdiction of either party. I find that the divorce was in violation of the provisions of G. L. (Ter. Ed.) c. 208, § 39. Shortly after the divorce in Nevada, both parties returned to Worcester, Massachusetts, and have since resided in Worcester. . . . I find that both parties are now residents of Massachusetts. I find the parties are husband and wife in Massachusetts."

The Nevada divorce proceedings are made part of the reported evidence. The complaint there filed by Mr. Coe was based upon extreme cruelty and desertion and alleged that the "plaintiff for more than six weeks last past and immediately preceding the filing of this complaint has been continuously and now is, a bona fide resident of, and during all of said period of time, has had and now has his residence within the State of Nevada, and has been physically, corporally and actually present in said State during all of the aforesaid period of time." Mrs. Coe's answer admitted the allegations as to residence. Her own complaint was based upon extreme cruelty, and alleged that "at the time of the filing of the plaintiff's complaint herein, the plaintiff could be found within the State of Nevada, and that the plaintiff can still be found within said State of Nevada." There were no allegations as to her own residence, but the agreement dated September 16, 1942, and acknowledged September 19, 1942, and approved in the decree, provided

that weekly payments be mailed to her at 32 Howland Terrace, Worcester, which was the residence given as hers by Mr. Coe in his affidavit for publication of summons.

We give no weight to the so called finding that "the Nevada court did not have jurisdiction of either party," which is to be read in connection with the preceding finding that neither party "had a bona fide residence in Nevada according to the law of Nevada" and in the light of the earlier findings that each party was resident or domiciled in Massachusetts. We treat the case as one in which both parties were domiciled in Massachusetts, and not in Nevada, a finding which the judge was not plainly wrong in making. *Cohen* v. *Cohen*, 319 Mass. 31. *Rubinstein* v. *Rubinstein*, 319 Mass. 568. The circumstance that both parties were temporarily physically in the State of Nevada and before the court does not alter the fundamental principle that "jurisdiction to grant a divorce must be based upon the domicil of at least one of the parties." *Cohen* v. *Cohen*, 319 Mass. 31, 34, and cases cited. *Bergeron* v. *Bergeron*, 287 Mass. 524, 528. There is no basis for a contention that there had been an actual litigation and determination of the jurisdictional facts within *Davis* v. *Davis*, 305 U. S. 32. "This was no adversary proceeding such as would warrant a finding of a genuine contest before a court having jurisdiction." *Langewald* v. *Langewald*, 234 Mass. 269, 270. Great stress, however, is laid upon the fact that Mrs. Coe in her answer (filed with her cross complaint on the date of the acknowledgment of the settlement agreement and the day of the divorce hearing) admitted the residence of Mr. Coe in Nevada. While it is true that instead she could have denied and litigated this fact, that was hardly to be expected in a collusive proceeding such as this plainly had become by that time. What happened was no more than an attempt to confer jurisdiction by consent in disregard of the interests of this Commonwealth, where the parties were both domiciled. As was said in *Andrews* v. *Andrews*, 188 U. S. 14, 41, "But it is obvious that the inadequacy of the appearance or consent of one person to confer jurisdiction over a subject matter not resting on consent includes

necessarily the want of power of both parties to endow the court with jurisdiction over a subject matter, which appearance or consent could not give." The effect of G. L. (Ter. Ed.) c. 208, § 39, [1] renders the divorce in this jurisdiction "void for all purposes" and "there is no estoppel even as against the party instituting the foreign proceedings." Holmes, C.J., in *Andrews* v. *Andrews*, 176 Mass. 92, 96. *Chapman* v. *Chapman*, 224 Mass. 427, 431. *Coe* v. *Coe*, 316 Mass. 423, 428. Accordingly, we are constrained to hold that Mrs. Coe is not estopped to deny the validity of the divorce. The separate support petition of Mrs. Coe against Mr. Coe in the Probate Court of Worcester County, which alleged that he had deserted her and that she was living apart from him for justifiable cause, was dated January 11, 1941, and was filed January 13, 1941 (313 Mass. 232, 233). It is clear that the divorce (extreme cruelty being included within cruel and abusive treatment [2] under G. L. [Ter. Ed.] c. 208, § 1) was, as the judge found, "for a cause occurring here while the parties resided here." Obtaining the divorce being one of the purposes of both Mr. Coe and Mrs. Coe in going to Nevada — and the judge, to say the least, was not plainly wrong in so finding — the statute applies. In *Smith* v. *Smith*, 13 Gray, 209, where a husband was allowed to maintain a libel in this Commonwealth notwithstanding the fact that he had obtained a decree of divorce in Indiana in violation of the statute, it was said by Chief Justice Shaw, at page 210, "If this were a mere private action, or suit in which the personal rights of the parties alone were concerned, there would be strong reason for applying the doctrine of estoppel, to the act of the husband, in resisting the present motion of the wife. But a suit for divorce is of a very different character; it

---

[1] "A divorce decreed in another jurisdiction according to the laws thereof by a court having jurisdiction of the cause and of both the parties shall be valid and effectual in this commonwealth; but if an inhabitant of this commonwealth goes into another jurisdiction to obtain a divorce for a cause occurring here while the parties resided here, or for a cause which would not authorize a divorce by the laws of this commonwealth, a divorce so obtained shall be of no force or effect in this commonwealth."

[2] See report of the commissioners for consolidating and arranging the Public Statutes (1901), page 1327. See also *Freeman* v. *Freeman*, 238 Mass, 150, 160,

is one in which the public have an interest, and in the conduct and result of which the best interests of society are concerned. Where proceedings in divorce are rightly commenced and conducted, the decree of divorce fixes the status of the parties for all purposes. But if the statute declares the divorce in Indiana wholly void and without force in this State, it cannot be made good by the consent of either or both the parties." We have been referred to many cases in other States whose policy it is to deny relief in their courts to parties seeking to repudiate a divorce obtained through voluntarily invoking the aid of a court of another jurisdiction. Whatever may be said as to the honor and ethics of such individuals, we can only state that, so far as are concerned cases falling within G. L. (Ter. Ed.) c. 208, § 39 — and the present case is one of them — the declared legislative policy of this Commonwealth has long been otherwise. In addition to cases hereinbefore cited, see *Chase* v. *Chase,* 6 Gray, 157; *Sewall* v. *Sewall,* 122 Mass. 156, 161; *Hardy* v. *Smith,* 136 Mass. 328; *Maloof* v. *Abdallah,* 218 Mass. 21, 23.

Certain decisions relied upon by Mr. Coe are not in point. Mrs. Coe does not, as did the petitioner for an annulment of marriage in *Ewald* v. *Ewald,* 219 Mass. 111, make her wrongful conduct the very ground of an application for relief from its consequences. See *O'Gasapian* v. *Danielson,* 284 Mass. 27, 34; *Paula* v. *Soares,* 304 Mass. 450; *Kerwin* v. *Donaghy,* 317 Mass. 559, 573; *Swenson* v. *Swenson, ante,* 105, 110. In *Payzant* v. *Payzant,* 269 Mass. 70, there was no lack of jurisdiction in the court which granted the divorce.

We have examined such exceptions to the admission of evidence as have been argued, and think that Mr. Coe was not injured. The scope of the cross-examination of Mr. Coe was largely within the discretion of the judge, no abuse of which is shown. The testimony of Mrs. Coe that she told her Nevada counsel that Mr. Coe always lived in Worcester was purely cumulative on that issue of fact and was, at most, harmless.

The decree dismissing the petition for revocation of the decree of separate support was right.

3. We proceed to a consideration of the decree upon Mrs. Coe's amended petition to modify the decree of March 25, 1942, which contained an allegation that "under all the facts and circumstances, including the increased costs of living, the adequate financial means of the respondent and the reasonable needs of your petitioner according to her status of life of which the respondent wrongfully deprived her, $35 per week is in amount insufficient in fact and in law." There were prayers for an increased award and for "such other and further relief as the petitioner may be equitably entitled to." Mr. Coe filed a substituted plea in bar as well as an amended answer based, in part, upon the Nevada divorce decree and settlement contract. For reasons we have already stated, there was no error in not sustaining the plea in bar or in failing to find in accordance with the allegations of the amended answer in so far as they were based upon the Nevada divorce.

There was no error in not ruling that the agreement dated September 16, 1942, is a bar to revision of the decree. It is assumed in accordance with the testimony that the agreement is a valid contract under the law of Nevada. *Coxe* v. *Coxe,* 21 Del. Ch. 30. See *Meyer* v. *Meyer,* 124 N. J. Eq. 198, 200. See also *Milliken* v. *Pratt,* 125 Mass. 374; Am. Law Inst. Restatement: Conflict of Laws, §§ 333, 346. It provides that in the event of a decree of divorce "the terms of this agreement shall be presented to the court with the request that the same be ratified, approved and confirmed by the court." As has been stated above, this was done. Thereafter under Nevada law the agreement was merged in the divorce decree. *Lewis* v. *Lewis,* 53 Nev. 398, 411. Compare *Wilson* v. *Caswell,* 272 Mass. 297. We do not reach consideration of the question of evidence whether Mrs. Coe was erroneously permitted to testify that she did not sign the contract freely and voluntarily, nor need we determine whether it could be found that the contract was a bad bargain.

A decree for separate support under G. L. (Ter. Ed.) c. 209, § 32, is subject to revision from time to time as circumstances may require. *Gifford* v. *Gifford,* 244 Mass. 302,

305. *Slavinsky* v. *Slavinsky*, 287 Mass. 28, 32. *Watts* v.
*Watts*, 314 Mass. 129, 133. Upon petition to the court which
made the original decree, that court can consider any change
in the position of the parties and any supervening facts, and
make such order as justice requires. *McIlroy* v. *McIlroy*, 208
Mass. 458, 465. See *Burgess* v. *Burgess*, 256 Mass. 99, 100;
*Barry* v. *Sparks*, 306 Mass. 80, 83; *Coughlin* v. *Coughlin*,
312 Mass. 452, 454. See also *Perkins* v. *Perkins*, 225 Mass.
392, 397–398. Such petition may be by either party. *Mal-
colm* v. *Malcolm*, 257 Mass. 225, 228.

In his report of material facts the judge found as follows:
Mrs. Coe's physical condition "has changed greatly since
the separation and since the decree of separate support."
She is suffering from a serious heart ailment. Her condi-
tion, which is getting worse, is incurable. She is unable to
do any kind of work. Her condition began to change in
the fall of 1942, immediately after her return from Nevada.
"I took into consideration the payment of $7,500 in reach-
ing a decision on the petition for modification." "I find
that the payments under the order for separate support
should be revised as of a date about October 1, 1942. I
based the increase in the order for payments under the
separate support decree on the inability of the petitioner
Mrs. Coe to support herself; her need of assistance in per-
forming any simple task or household duty; her need of
medical attention and the known increased cost of living,
and the ability of Mr. Coe to make payments."

The amended petition, which does not refer to any
changed condition of Mrs. Coe's health, alleges no ground
on which the evidence will support a decree for modifica-
tion. There was no evidence of the extent of any "in-
creased costs of living" between March 25, 1942, the date
of the original order, and May 21, 1945, the date of the
decree on the amended petition. The question of the "rea-
sonable needs of your petitioner according to her status of
life of which the respondent wrongfully deprived her" was
adjudicated in 313 Mass. 232. That there were "adequate
financial means of the respondent" is not a changed cir-
cumstance. Moreover, the judge based his order of May 21,

1945, "on a finding of net worth of not less than $600,000." That finding was plainly wrong. It was expressly based upon a finding that "[d]uring a period of about three years ending in 1933, he received in money and securities over $600,000," and upon a finding of failure to show any substantial losses in twelve years thereafter. But counsel for Mrs. Coe introduced in evidence answers of Mr. Coe to interrogatories propounded by Mrs. Coe, which showed that, as of a time immediately prior to the original separate support hearing, he had a net worth of approximately $200,000. Mrs. Coe was bound by these answers, which were uncontradicted. *Minihan* v. *Boston Elevated Railway,* 197 Mass. 367, 373. *Bell Cab Co.* v. *New York, New Haven & Hartford Railroad,* 293 Mass. 334, 336. *Champlin* v. *Jackson,* 317 Mass. 461, 463. *Falzone* v. *Burgoyne,* 317 Mass. 493, 495. *Meunier's Case,* 319 Mass. 421, 423.

It does not appear that any objection was made to the introduction of evidence as to the physical condition of Mrs. Coe as a ground for modification. We, accordingly, consider that evidence, an examination of which does not show that the findings as to Mrs. Coe's heart condition are plainly wrong. Although she was ill from some not too clearly defined cause at the time of the original hearing on her separate support petition in March, 1942, there was testimony from which the judge who heard the petition for modification could have found that her general condition had deteriorated, and that her heart ailment was becoming worse and was incurable. The finding that she is unable to do any kind of work is not plainly wrong, and shows a changed circumstance. While she testified that in March, 1942 (when the decree on the separate support petition was entered), her physical condition was such that she was unable to engage in any gainful employment, it could be found that she is now unable to do housework as well.

As the finding as to the present financial worth of Mr. Coe was based upon subsidiary findings which cannot stand, there was error in the decree for modification.

4. A further question concerns the appeal of Mr. Coe from the decree allowing costs and expenses to Mrs. Coe

which was entered simultaneously with the decrees in the proceedings in connection with which they were allowed. That decree was authorized by G. L. (Ter. Ed.) c. 209, § 33, as appearing in St. 1933, c. 360. See also, as to allowance of costs and expenses in divorce proceedings, G. L. (Ter. Ed.) c. 208, § 38, as appearing in St. 1933, c. 288. The subject matter rested largely in the discretion of the judge, and we see no occasion for revising its exercise. *Spilios* v. *Papps*, 292 Mass. 145, 147–148. See *Commissioner of Insurance* v. *Massachusetts Accident Co.* 318 Mass. 238, 241–242. The cases of *Wallace* v. *Wallace*, 273 Mass. 62 (divorce), and *Densten* v. *Densten*, 280 Mass. 48 (separate support), upon the enactment of St. 1933, c. 288, and St. 1933, c. 360, ceased to be authority for the proposition that costs and expenses could not be allowed in subsidiary proceedings in libels for divorce or in subsidiary proceedings arising under petitions for separate support. See *Rubinstein* v. *Rubinstein*, 319 Mass. 568, 576.

5. The contention that the judge did not afford to Mr. Coe a full, fair, and impartial trial is not borne out by the record. See *Skudris* v. *Williams*, 287 Mass. 568, 571; *King* v. *Grace*, 293 Mass. 244, 247.

6. It follows that the decree dismissing Mr. Coe's petition for revocation of the decree of March 25, 1942, is affirmed; the decree upon Mrs. Coe's petition to modify the decree of March 25, 1942, is reversed; and the decree for costs and expenses is affirmed.

*So ordered.*