CARMELO CANNISTRARO *vs.* MARIA COSTANZA CANNISTRARO.

Middlesex. January 6, 1967. — February 13, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Divorce,* Desertion, Foreign decree of separation. *Husband and Wife,* Living apart.

A husband was not barred from maintaining a libel for divorce on the ground of desertion by a decree of a civil tribunal in Italy, entered many years before the filing of the libel, adjudging that "the legal separation of the spouses must be pronounced on the basis of the guilt of both of them," where it appeared that essentially the decree determined that, without violating the law or policy of the State, the spouses could live apart without furnishing marital assistance or performing marital duties and ruled in effect that the libellee was not justified in failing to join the libellant when he offered her a home on his return from military service and that she then "substantially deserted" him, that the decree did not adjudge that after entry thereof the libellee would be free of marital fault in not living with the libellant or that fault on his part justified her in living apart, and that inclusion of fault on his part as well as the libellee's as a ground for the decree was to relieve the spouses of costs and the libellee of the stigma of committing alone an offence against the State. [67–69]

A husband was entitled to a decree of divorce on the ground of desertion by the libellee in Italy upon his return from military service many years before the filing of the libel, although upon his return he lived

in his sister's home and brought a proceeding in Italy for a decree of legal separation because of the libellee's refusal to live with him and she declared therein "her willingness . . . to a reconciliation," and after he came to the United States he had not sought to bring her here, where it did not appear that the attempted reconciliation failed because of his refusal to accept a return by her, or that she would have come here if he had asked her to, or that in failing to support her he acted "grossly or wantonly and cruelly," and, upon all the facts found, a conclusion was required that the libellee's desertion upon the libellant's return from military service continued into and throughout the three years next prior to the filing of the libel [69–70]; CUTTER, J., concurring.

LIBEL for divorce filed in the Probate Court for the county of Middlesex on January 13, 1965.

The case was heard by *Monahan, J.*

*Charles P. Burgess* for the libellant.

No argument or brief for the libellee.

WHITTEMORE, J. The issue on this appeal is whether the Probate judge rightly ruled that the libellant was barred from divorce for desertion (G. L. c. 208, § 1) by the decree of legal separation between the spouses entered by the Civil Tribunal of Agrigento, Italy, December 18, 1946, adjudging that "the legal separation of the spouses must be pronounced on the basis of the guilt of both of them."

The Probate judge made the following findings. The spouses, Carmelo and Maria, were married on March 2, 1943, in Aragona, Agrigento Province, while Carmelo was on military leave. "Prior to his return to military service, . . . [Carmelo] had taken a two years lease on a house in Aragona, with rent prepaid, and in addition had turned over his entire savings to . . . [Maria]." After his release from the service in 1945 and his return to Aragona, Maria refused to live with him in a domicil of his own choosing and he made no contribution to her support. He came to the United States in 1960 and did not seek to bring Maria. He has not since sent her funds to come here. Maria did not appear in the Probate Court proceedings.

The foreign record includes the following findings and rulings: In an interval of Carmelo's military service, "during the period of disorder," he returned to Aragona but went to live with a sister, failed to support Maria, and cut

off her military allowance. This, the Italian court ruled, was desertion, not justified by Maria's prior conduct in leaving his family's home, it having been necessary for Maria to sleep in a room with two women, one of whom was tubercular, a brother-in-law, and a seventeen year old boy.

The tribunal also, in a prior paragraph, found that when Carmelo returned home from military service (we conclude this was in 1945, as the Probate judge found) Maria at first consented to live with him on condition that they live alone but later she "refused to follow him" stating she would live with him only in her grandmother's house. The court ruled that this was a failure in a most essential attribute of marriage and that she had "substantially deserted . . . [Carmelo], even though at the hearing before the President of the Tribunal she declared her willingness . . . to a reconciliation with him; and this constitutes one of the grounds of separation provided under the law in force."

Carmelo recognizes that this foreign decree is to be given the force of a domestic judgment. *Hilton* v. *Guyot,* 159 U. S. 113. *Amato* v. *Amato,* 244 Mass. 349, 351.

The decree, we conclude, in its legal effect on a right to a divorce in this Commonwealth, differs from a decree of a Massachusetts court establishing the right of the wife to live apart for the fault of the husband. The decree shows that the findings are based on facts established in a prior criminal proceeding relating to the marital conduct of the spouses. It shows the intervention of the public prosecutor in the separation proceedings. The decree shows also that the decision in the criminal court controlled and determined the judgment in the civil proceedings. It reads: "Due to superior considerations which are confirmed by the sentence of the District Court Judge of Aragona who decreed the responsibility of both spouses for the crime of violation of the duties of family assistance, the legal separation of the spouses must be pronounced on the basis of the guilt of both of them, with the due consequences of the law."

The decree, we think, was a determination that, without violating the law or policy of the State, the spouses might

Cannistraro *v.* Cannistraro.

live apart and need furnish no marital assistance; also that no legal sanctions might be availed of by either spouse to enforce the other's marital duties. This was all that was significant in a jurisdiction where divorce will not be decreed even for an existing unjustified marital wrong.

The decree was not, however, an adjudication that Maria was justified in failing to join her husband when, the exigencies of wartime living conditions being ameliorated, he offered a home. Indeed, by establishing her "guilt" it ruled in effect that she was not so justified. At the time of the final break between the spouses Maria was found to have failed in a duty constituting "one of the most essential attributes of marital . . . authority."

Nor does the decree adjudge that Maria would thereafter be free of marital fault in not living with Carmelo. Indeed, the implication of the concept that divorce is contrary to public policy is that the parties ought to recognize and conform to the obligation of the marital state even though the law no longer supplies sanctions. Carmelo had sought to act in recognition of this; Maria had declined to do so. Doubtless after the judgment Carmelo was under no legally enforceable obligation to accept an offer of Maria to return; the decree, however, does not determine that he would be without fault in such rejection of his duty in the continuing marriage. See *Espinola* v. *Espinola,* 273 Mass. 450, 452.

The decree lacks the essential attributes of those separation decrees in our courts that are effective to bar a divorce for desertion. It is not a determination that, in living apart, the wife committed no marital wrong. Nor is it a ruling that the husband's fault justified the wife's conduct. Compare *Miller* v. *Miller,* 150 Mass. 111; *Amato* v. *Amato,* 244 Mass. 349. The decree, on the other hand, does establish that Maria was without justification in rejecting the offered marital domicil; thus it shows that marital wrong which under our law supports a divorce for desertion.

A further consideration may be noted. The inclusion of Carmelo's fault as well as Maria's as a ground for the de-

cree appears from the judgment to have had effect in relieving Maria and Carmelo of costs; also it avoided placing on Maria alone the stigma of an offence against the State. Since no further relief than the separation could be decreed by the State there was no occasion to consider the effect of the judgment on a right in Carmelo to further relief.· But Carmelo in this Commonwealth may seek and has sought an absolute divorce. In these proceedings, therefore, the effect of the inclusion in the Italian judgment of the reference to Carmelo's fault should be no more than that judgment, in the context of the Italian restriction against divorce, clearly requires.

The issue remains whether Carmelo is barred by consent to the separation. His bringing the petition because of Maria's refusal to live with him was not inconsistent with a desire to have her do so and it did not give rise to a presumption of consent. *Espinola* v. *Espinola,* 273 Mass. 450, 452 ("What he sought in . . . [the prior separation proceeding] was that, while the wife persisted in her conduct and would not of her own choice live with him, she should not interfere with him or disturb him or in any way deprive him of his liberty. This is not inconsistent with a willingness to resume marital relations. Approval of the wife's conduct is not to be inferred from this petition. If it were granted and the wife were willing to return, he could not obtain a divorce for desertion if he refused to take her back"). For the presumption where the prior libel was for divorce, see *Miranda* v. *Miranda,* 350 Mass. 478, 480, and cases cited. We do not construe G. L. c. 208, § 22, as amended by St. 1962, c. 433, to change the rule of the *Espinola* case. See 37th Report of the Judicial Council (1961) Pub. Doc. No. 144, pp. 42–44.

There is no finding that the attempted reconciliation in the course of the court proceedings failed because of Carmelo's refusal to accept Maria's return. The finding that at the hearing Maria declared her willingness to a reconciliation proves neither her willingness to live with Carmelo in his chosen domicil, nor Carmelo's unwillingness to receive her there. Compare *Bradley* v. *Bradley,* 160 Mass. 258.

Nothing appears as to the subsequent conduct of either spouse except that Carmelo has not sought to bring Maria to this country. This shows no more than acquiescence in the state of affairs that Maria's desertion brought about. It does not show that had Maria sought to return she would have been rejected. Compare *Ford* v. *Ford,* 143 Mass. 577, 579.

The Italian decree shows no such misconduct by Carmelo as would bar his libel for divorce for desertion. It does not appear that at the time of the "disorder" he had any other place to live than in his sister's home. If by going to live there he "deserted" his wife, his subsequent offer of a home removed that act as justification for Maria's desertion. His failing to support Maria at that time and after she declined to join him in 1945 is not shown to have been done "grossly or wantonly and cruelly." G. L. c. 208, § 1. See *Keenan* v. *Keenan,* 219 Mass. 107, 109; *Reddington* v. *Reddington,* 317 Mass. 760, 764 (cases cited); *Young* v. *Young,* 333 Mass. 767. Compare *Lyster* v. *Lyster,* 111 Mass. 327, 330.

We conclude that the decree does not extinguish the effect of Maria's wrong in deserting Carmelo or bar its being given its appropriate significance in this jurisdiction where legal consequences, beyond those permitted in Italy, may be decreed based on that wrong. We conclude also that Maria's desertion as a wrong against the marital state continued into and throughout the three years next prior to the filing of the libel and that, on the findings below, Carmelo is entitled to a decree. G. L. c. 208, § 1.

*Decree reversed.*

CUTTER, J. (concurring) I concur in the result because there has been no proof concerning the effect under Italian law of the decree of the Italian civil tribunal. Although we may take judicial notice of foreign law not brought to our attention, we are not required to do so. G. L. (Ter. Ed.) c. 233, § 70. *De Gategno* v. *De Gategno,* 336 Mass. 426, 431. The opinion of the court thus does not fail to give recogni-

tion, as matter of comity, to any clearly established necessary incident or effect of that decree. See Restatement 2d: Conflict of Laws (Tent. draft No. 11, April 23, 1965), § 430e. The result is consistent with our cases giving to a proceeding for separation or to a separation decree no greater effect as a bar to a later divorce libel than is necessarily incident to, or involved in, the earlier proceeding or decree. See *Espinola* v. *Espinola*, 273 Mass. 450, 452–453; *Cochrane* v. *Cochrane*, 303 Mass. 467, 471–473. Cf. *Rubinstein* v. *Rubinstein*, 319 Mass. 568, 575–576.