CATHERINE MINIHAN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.     January 14, 1908. — February 26, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Interrogatories. Practice, Civil,* Exceptions. *Negligence. Street Railway. Res ipsa Loquitur. Evidence,* Presumptions and burden of proof.

In an action of tort against a corporation, if the president of the defendant has refused to answer certain interrogatories filed by the plaintiff, on the ground that the questions contained in them are not material to the issues in the case, the refusal of the defendant's president to answer the interrogatories, whether justified as matter of law or not, is not for the consideration of the jury, and a ruling allowing the plaintiff to read the questions and the refusals to the jury is erroneous.

In an action of tort against a corporation, where the presiding judge, against the defendant's exception, erroneously has allowed the plaintiff to read to the jury refusals of the defendant's president to answer certain interrogatories on the ground that they are immaterial, and the plaintiff in his argument to the jury comments on these refusals as indicating a desire on the part of the defendant not to disclose material evidence which it could disclose, if the defendant in its argument to the jury attempts to justify the refusals, this does not waive its exception to their admission as evidence, it being obliged to argue the case on the evidence which has been admitted.

In an action against a corporation operating a street railway for personal injuries, if it appears that the plaintiff's injuries were caused by a car of the defendant in which the plaintiff was a passenger leaving the rails near the edge of an embankment seven feet high, going off the bank and turning over on its side in a street below, and this accident is unexplained, the doctrine of *res ipsa loquitur* applies, an inference being justified that the defendant was at fault, and this inference being the same if the car was in good condition at the time of the accident.

In an action against a corporation operating a street railway for personal injuries caused by a car of the defendant in which the plaintiff was a passenger leaving the rails near the edge of an embankment seven feet high, going off the bank and turning over on its side on a street below, where the accident was unexplained, the plaintiff put in evidence the answers of the defendant's president to

interrogatories filed by the plaintiff containing testimony that the car had been inspected shortly before the accident and was in good condition. There was no evidence in the case in addition to the answers to the interrogatories except the fact of the accident. The defendant asked the judge to instruct the jury that there was no evidence of negligence on the part of the defendant or of its servants or agents in regard to the inspection of the car, and that there was no evidence from which the jury would be warranted in finding the existence of any defect in the car or its apparatus at the time of the accident. *Held*, that these instructions should have been given, not because the plaintiff was estopped to contradict the answers of the defendant's president in regard to the inspection and good condition of the car, but because no such evidence in contradiction was introduced, and the happening of the accident, although evidence of negligence of some kind on the part of the defendant, was not evidence of negligence in failing to keep the car in good condition.

TORT for personal injuries incurred on the evening of August 31, 1904, when the plaintiff was a passenger on a short four wheeled box car of the defendant on Dorchester Street in that part of Boston called South Boston. Writ dated October 20, 1904.

In the Superior Court the case was tried before *Holmes*, J. It appeared that the car in which the plaintiff was a passenger contained about twenty-five passengers and was not crowded. The accident occurred at or near a certain disused railroad bridge of the New York, New Haven, and Hartford Railroad Company, near the corner of Newman Street and Dorchester Street. For some months before and after this accident, the street department of the city of Boston had been cutting down the grade of Dorchester Street at this point, and for a considerable distance on either side of this point. The steam railroad formerly went under Dorchester Street, and the flooring of the steam railroad bridge represented the former level of Dorchester Street at its highest point, from which it sloped off in either direction ; but at the time of the accident all but a small portion of Dorchester Street had been cut down to the level on which the steam railroad formerly ran, leaving a strip of Dorchester Street on its original level, consisting of a sidewalk and a roadway on which remained one of the defendant's tracks; the roadway and tracks passing over one end of the old steam railroad bridge, the level of the bridge being about eight or nine feet above the new level of Dorchester Street. This strip of Dorchester Street gradually rose from a point a considerable distance back of the bridge to the bridge and then sloped away

again on the other side of the bridge, and terminated on its outer edge throughout its entire course in a fairly steep bank, which represented the limit of the advancing excavation. During the course of the work, the defendant had run its cars over the track on the strip of roadway and was running them there on the evening of the accident; and the rail of the track nearer the edge of the bank was about a foot from that edge. The portion of the street occupied by the track was paved and the paving extended out to the edge of the bank.

The car in which the plaintiff was being transported left the rails and went over the bank at a point some feet beyond the bridge, and at a place where the bank was about seven feet high; the car turned over on its side in the street below; and the plaintiff, who was in the exercise of due care throughout, was injured.

Before the trial, namely on August 22, 1906, the plaintiff under the statute had filed sixteen written interrogatories to William A. Bancroft, the president of the defendant. The questions, refusals to answer and answers, which are referred to in the opinion, were as follows:

" Int. 4. For how long a time prior to August 31, 1904, had the motorman in charge of said car at the time of the accident been in the service or employ of the defendant company in the capacity of motorman ?

" Ans. 4. I am advised by counsel that there is nothing in the plaintiff's claim as set out in her declaration rendering such a question as this relevant or in any way material, and that for that reason I am not obliged to answer it. I must, therefore, decline to answer this interrogatory unless ordered by the court so to do.

" Int. 5. For how long a time prior to August 31, 1904, had the conductor of said car been in the service or employ of the defendant company in the capacity of conductor ?

" Ans. 5. I must decline to answer this interrogatory for the reasons stated in my answer to Interrogatory 4.

" Int. 6. On August 31, 1904, was not said motorman employed merely as a ' spare' motorman, or as an 'extra' motorman?

" Ans. 6. I must decline to answer this interrogatory for the ·reasons stated in my answer to Interrogatory 4.

" Int. 7. On August 31, 1904, was said conductor employed merely as a ' spare ' conductor, or as an ' extra ' conductor?

" Ans. 7. I must decline to answer this interrogatory for the reasons stated in my answer to Interrogatory 4."

" Int. 10. Was any examination made of said car by the defendant corporation on said August 31, 1904, or shortly before, or shortly afterwards ?

" Ans. 10. Yes, the car was, of course, inspected from time to time before the accident, and it was carefully examined by employees of this company for the purpose of reporting upon its condition after the accident.

" Int. 11. If so, state fully what examination was made of same, where and by whom, and what was the condition of the car and its appliances at the time of said examination or examinations ?

" Ans. 11. See answer to Interrogatory 10.   I am advised by counsel that the statute expressly exempts me from the obligation of giving the names of the witnesses who made this examination, and for that reason I must decline to give their names before the trial.   The condition of the car after the accident was as stated in Interrogatory 8. . The wheels, axles, truck, frame, springs, journal boxes, and brake mechanism were found to be in perfect condition after the accident."

The interrogatories numbered 4, 5, 6 and 7 and the refusals of the defendant's president to answer them were read to the jury against the objection and exception of the defendant.

In arguing to the jury, the counsel for the defendant attempted to defend the witness's refusals to answer these interrogatories and the counsel for the plaintiff commented in his argument upon the refusals to answer which he had been permitted to read as indicating a desire on the part of the defendant not to disclose material evidence which it could disclose.

At the close of the evidence the defendant asked the judge to order a verdict for the defendant, which the judge refused to do. The defendant then asked for certain rulings, among which were the following:

" 9. The court instructs the jury that they cannot find a verdict against the defendant unless they are satisfied that the accident was due to some negligence on the part of the defendant, or of its servants or agents, and that they are not entitled to

guess or speculate as to the nature of such negligence, but that they must be able to determine in their own minds on the evidence and with reasonable certainty what the negligence was that caused the accident, if it was caused by negligence.

" 10. The court instructs the jury that they cannot find a verdict against the defendant unless they are satisfied by a fair preponderance of the evidence that the derailment of the car was due to some negligence on the part of the defendant, or of some of its servants or agents; and the jury in that case is not entitled to find such negligence from the mere happening of the accident without more; but they must be able to reach some conclusion as to what the negligence was.

" 11. The court instructs the jury that unless the plaintiff has proved by a fair preponderance of the evidence that the derailment and overturning of the car were due to some negligence on the part of the defendant, or of its servants or agents, as alleged in the declaration, the plaintiff is not entitled to recover; and in determining this question the jury is not entitled to guess or speculate as to the existence of such negligence; but the jury must be satisfied by a fair preponderance of the evidence as to the existence and nature of some particular negligence before they can find a verdict for the plaintiff."

" 17. The court instructs the jury that there is no evidence from which they would be warranted in finding any negligence on the part of the defendant, or of its servants or agents, in the inspection of the car prior to the accident."

" 20. The court instructs the jury that there is no evidence from which they would be warranted in finding the existence of any defect in the car or its apparatus at the time of the accident."

The judge refused to make any of these rulings. The jury returned a verdict for the plaintiff in the sum of $7,112; and the defendant alleged exceptions, which after the death of *Holmes*, J., were allowed by *Brown*, J., under R. L. c. 173, § 108, the truth of the exceptions having been agreed to by the counsel for the parties.

*W. G. Thompson*, (*S. H. E. Freund* with him,) for the defendant.

*J. E. Cotter*, for the plaintiff.

LORING, J.   1. The refusal of the president of the defendant railway company to answer interrogatories 4, 5, 6 and 7 was the assertion of a right based on a question of law.

It happened that he was right in his refusal to answer these interrogatories, that is to say, he was right on the question of law raised by him.   The plaintiff did not declare on negligence in employing an incompetent conductor or motorman, and for that reason these interrogatories were not material.

But the fact that the president of the defendant company was right is of no consequence in this connection.   Right or wrong, his refusal to answer an interrogatory based on a question of law was a matter for the court and for the court alone ; it was not a matter for the consideration of the jury, much less was it a matter from which the jury ought to have been allowed to draw an inference of fact.   It is the right of either party to an action in court to raise any question of law he may deem wise.   In case he does so, the sole question is whether the point of law is well taken.   That (as we have said) is a question for the court and for the court alone.   It is for this reason that the practice has obtained of arguing questions of law in the absence of the jury when the discussion in their presence would be apt to mislead them in determining the issues of fact to be decided by them.

The exceptions taken to the ruling allowing the plaintiff's counsel to read to the jury the refusal by the defendant's president to answer interrogatories 4, 5, 6 and 7 were not waived by the argument to the jury made by counsel for the defendant. After the refusal of the defendant's president to answer these interrogatories had been read to the jury as evidence for their consideration there was nothing left for counsel to do but to argue the case on the evidence which had been admitted.

These exceptions must be sustained.

2. The exceptions taken to the refusal to give the ninth, tenth and eleventh rulings asked for must be overruled.

The defendant's contention here is that by putting in evidence the answers of the defendant's president to interrogatories 10 and 11 the plaintiff's case must be taken to admit that the car was in good condition; and if the car was in good condition there is a partial explanation, and for that reason the rule of *res ipsa loquitur* does not apply.   If there had been a binding

admission by the plaintiff that the car was in good condition the effect of the rule of *res ipsa loquitur* would not have been lessened.

What is meant by the statement that *res ipsa loquitur* applies where there is no explanation by the defendant (*Feital* v. *Middlesex Railroad*, 109 Mass. 398, *Savage* v. *Marlborough Street Railway*, 186 Mass. 203, *Hebblethwaite* v. *Old Colony Street Railway*, 192 Mass. 295) is that this rule applies where the defendant does not show what caused the accident. Had the evidence that the car had been inspected and found to be in good order been coupled with evidence that the same was true of the track and that the conductor and motorman had exercised due care, there would have been no explanation of how this accident occurred.

Again, the rule of *res ipsa loquitur* means that in the ordinary experience of mankind the accident would not have happened without fault on the part of the defendant. Holmes, J., in *Pinney* v. *Hall*, 156 Mass. 225, at pp. 225, 226. See also Braley, J., in *Hofnauer* v. *R. H. White Co.* 186 Mass. 47, 49. A car ordinarily does not leave its track and roll down an embankment unless something is wrong, and that is as true when the car is in good condition as when it is not.

3. We are of opinion that the exception to the refusal to give rulings 17 and 20 must be sustained. Not however on the ground that the fact that the car was in good condition became a fact in the case as if it had been admitted in the pleadings. Where a plaintiff puts in the defendant's answer to interrogatories he does not thereby bind himself to the truth of the facts therein stated. He could contradict the facts there stated by evidence. But until contradicted by evidence, the truth of the facts stated stands as against the plaintiff who puts in the defendant's answers. In the case at bar there was no evidence in addition to the answers to interrogatories, but the fact of the accident; and in our opinion the fact of the accident is not evidence which warrants a finding that the car was not in good condition, and the plaintiff's evidence that it was in good condition is not overcome.

*Exceptions sustained.*