COMMONWEALTH *vs.* JOHN E. O'TOOLE, JUNIOR, & another.

Norfolk.    February 6, 1950. — May 8, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Accessory and Principal. Homicide. Practice, Criminal,* Exceptions: whether error harmful. *Error,* Whether error harmful. *Evidence,* Relevancy and materiality, Of consciousness of guilt.

Circumstantial evidence warranted submission to a jury of an indictment charging two with being accessories before the fact to the murder of one whose body was found in water in a quarry in Quincy, bound with iron bars, over three and one half months after a day on which one of the defendants had had some negotiations with the deceased in Boston respecting purchase of an automobile and had used an automobile of the other defendant and the two defendants had been seen together, following which the deceased had disappeared.

No reversible error appeared in the admission in evidence at the trial of an indictment charging the defendant with being an accessory before the fact to a murder alleged to have been committed by one John Doe, of evidence that, when the murdered man's body was found in water in a quarry, over three and one half months after he had disappeared, iron bars were bound about it, where the trial judge instructed the jury that "on all the evidence there was nothing which would warrant" a finding that the iron bars were taken by the defendant and that they should not consider them, but that, on the question of extreme atrocity and cruelty, they might consider the fact that there were iron bars so bound, and where the jury found the defendant guilty of being an accessory before the fact to murder in the second degree only, so that they could not have found extreme atrocity and cruelty.

No error appeared in the admission in evidence, at the trial of an indictment charging the defendant with being an accessory before the fact to murder committed with a blunt instrument, of a pistol of foreign make found in the defendant's room, the butt of which was capable of being the blunt instrument with which the victim was killed; or of a basket of laundry found in the defendant's room containing handkerchiefs similar to one found about the neck of the victim when his body was found in water in a quarry over three and one half months after he had disappeared; or of a conversation with the defendant respecting changing of blood stained seats of an automobile in which the defendant had ridden with the victim before his disappearance.

INDICTMENT, found and returned on April 9, 1948, charging one John Doe with murder of Edwin P. Irwin, Junior,

by striking him on the head with a blunt instrument, and alleging that John E. O'Toole, Junior, and Michael DiMattio "before the said felony was committed, did incite, procure, aid, counsel, hire or command the said John Doe the said felony to do and commit."

The case was tried in the Superior Court before *Smith*, J.

*F. Juggins*, for the defendant DiMattio.

*J. F. O'Connell, Jr.*, for the defendant O'Toole.

*E. R. Dewing*, District Attorney, (*B. W. Flynn*, Assistant District Attorney, with him,) for the Commonwealth.

Lummus, J. The defendants, John E. O'Toole, Junior, and Michael DiMattio, were indicted for being accessories before the fact to the murder of Eugene P. Irwin, Junior, at Quincy on December 4, 1947. The defendants were tried, and at the close of the evidence each defendant moved for a directed verdict of not guilty, which motion was denied. The jury found each guilty of being accessory before the fact to murder in the second degree. Each was sentenced to imprisonment for life. G. L. (Ter. Ed.) c. 274, § 2. Each appealed.

There was evidence of the following facts. Irwin, a married man of thirty-three years, was a dealer in used automobiles, in partnership with one Hagen, under the name of Irwin Motors, with a place of business at 1285 Dorchester Avenue. He left his house on the morning of December 4, 1947, shortly after ten o'clock. He went to his place of business and saw his partner. He then went to the National Shawmut Bank branch at Upham's Corner, and cashed a check for $4,100, receiving that sum in $50 and $100 bills. About noon he left with one Cavanaugh in his automobile, saying that he was to meet O'Toole to buy a Cadillac automobile. O'Toole telephoned the Irwin Motors about 12:15 P.M. and asked when Irwin was coming into town (Boston) with the money, saying, "The deal has to be cash." (But later O'Toole insisted that he had told Irwin to bring a certified check instead.) About eleven o'clock that morning O'Toole and DiMattio were seen together in an automobile near the South Station in Boston, and in the afternoon of

that day both were seen in an automobile in Dedham and Canton.

O'Toole testified that prior to December 4 he had received a telephone call from one Dave Andrews who wished to sell a 1947 Cadillac automobile; that he talked with Irwin, who said he was interested; that he arranged to meet Irwin on December 4 at a gasoline station in Boston; that Irwin and O'Toole drove to 10 Post Office Square shortly after noon on December 4; that Irwin got out of the automobile to find Andrews; that afterwards O'Toole could not find Irwin, and drove away. There was no direct testimony that Irwin was afterwards seen alive. Both O'Toole and DiMattio denied on the witness stand that they saw each other on December 4.

When Irwin and Cavanaugh arrived in Boston, Irwin got out and got into a Cadillac automobile driven by O'Toole, which could have been found to belong to DiMattio. It could have been found that Irwin wrote the registry number of that automobile, 53661, on a piece of cardboard, later found in his pocket.

On March 29, 1948, the dead body of Irwin was found in deep water in a quarry in Quincy. His skull had been fractured by blows from some blunt instrument. Only five cents in money were found on the body, although he had $4,100 on him in large bills when he disappeared. Around the neck was a handkerchief unusual in character which was identical with two others found in O'Toole's room, which could have been found to belong to O'Toole.

When taken to the Quincy police station, O'Toole refused to say anything until he had seen his lawyer, because, he said, "I'm in a hell of a spot, and I know it." At his house, before being arrested, O'Toole declined to tell his whereabouts on the morning of December 4. He directed one Ruth Billings, with whom he kept company, to call up his lawyer, "and don't talk too much and keep your mouth shut."

In a restaurant about December 15, O'Toole said to a police officer, "I would have a lot of explaining to do if they

found him [Irwin] dead in a quarry or some place." Shortly after January 2, 1948, DiMattio came to the office of the Cadillac Automobile Company, and then had a $1,000 bill with him. There was blood on the seat covers of DiMattio's automobile after December 4, 1947, some of it spattered in fine drops, and he had the seat covers changed on December 5. When he bought the new seat covers, he gave the name of Libertine instead of his own name. Human blood was found on a jacket belonging to DiMattio. O'Toole drove DiMattio's automobile to a gasoline station, at a time which could be found to have been after December 4, and got permission to change the front seat, and did so. He burned the padding of the old seat. Later he denied having visited the gasoline station in DiMattio's automobile.

The fifth assignment of error of DiMattio and the sixth of O'Toole are to the refusal to direct verdicts for the defendants. Although the conviction of each was based on circumstantial evidence, the evidence was sufficient to warrant it, and a verdict could not have been directed for the defendants. Even if the defendants were present in the vicinity of the murder when it was committed, they might have been accessories before the fact. *Commonwealth* v. *DiStasio*, 297 Mass. 347, 361. *Commonwealth* v. *Mannos*, 311 Mass. 94, 109.

The first assignment of each defendant is to the admission in evidence of the testimony of a police lieutenant named Riley that iron bars found on the body of Irwin were similar to those that could have been obtained on the land of the Pilgrim Diner which was frequented by O'Toole. In his charge, the judge instructed the jury that "on all the evidence there was nothing which would warrant you in finding that these two iron bars were taken by O'Toole, if he took them," and that they should not consider them, but that they might consider the fact that there were iron bars bound about the body of Irwin on the question of extreme atrocity and cruelty. The jury could not have found extreme atrocity and cruelty, for they found the defendants guilty of being accessories before the fact to murder only

in the second degree. So far as the bars might have been considered as evidence of their possession by O'Toole, it is to be assumed that the jury followed the instruction of the judge to disregard them. *Berlandi* v. *Commonwealth,* 314 Mass. 424, 452.

The second assignment of each defendant is to the admission in evidence of a pistol of foreign make found in O'Toole's room behind a radio, the butt of which was capable of being the blunt instrument with which Irwin's skull was fractured. There was no direct evidence that the pistol was in fact the instrument used. But it is commonly competent to show the possession by a defendant of an instrument capable of being used in the commission of the crime, without direct proof that that particular instrument was in fact the one used. *Commonwealth* v. *Williams,* 2 Cush. 582, 586. *Commonwealth* v. *Choate,* 105 Mass. 451, 458, 459. *Commonwealth* v. *Brown,* 121 Mass. 69, 81. *Commonwealth* v. *Howard,* 205 Mass. 128, 152. *Commonwealth* v. *Bartolini,* 299 Mass. 503, 511, 512. *Commonwealth* v. *Giacomazza,* 311 Mass. 456, 470. *Commonwealth* v. *Noxon,* 319 Mass. 495, 539, 540. *Starchman* v. *State,* 62 Ark. 538. *People* v. *Hale,* 81 Cal. App. 734. *People* v. *McCall,* 10 Cal. App. (2d) 503, 505, 506. *People* v. *Rodriquez,* 31 Cal. App. (2d) 524. *People* v. *Hightower,* 40 Cal. App. (2d) 102. *People* v. *Dale,* 355 Ill. 330, 334. *Smith* v. *State,* 182 Md. 176. *Commonwealth* v. *Pasco,* 332 Pa. 439. *State* v. *Taylor,* 159 Wash. 614. *State* v. *Montgomery,* 16 Wash. (2d) 130. We think there was no error in the admission of the pistol.

The third assignment of each defendant is to the admission in evidence of a basket of laundry found in O'Toole's room, and to the refusal to strike out the evidence. This evidence was admissible. *Commonwealth* v. *Giacomazza,* 311 Mass. 456, 470. The handkerchiefs that resembled the one found on the body of Irwin came from that basket. We find no error in the action of the judge on these assignments, or on O'Toole's assignment numbered 4 which was to the admission of those handkerchiefs.

The fourth assignment of DiMattio and the fifth of

O'Toole are to the admission of the testimony of one Fitz-
gerald to a conversation with O'Toole when he came into
Fitzgerald's place of business with DiMattio's automobile
and asked Fitzgerald to change the seats in that automobile,
and proceeded to change the seats himself when Fitzgerald
said he was too busy to do the work, and that he then
burned the padding. It could have been found that this
happened after the disappearance of Irwin, and that it
showed consciousness of guilt and a desire to get rid of
incriminating evidence of blood stains.

In each case the entry will be

*Judgment affirmed.*