COMMONWEALTH *vs.* GEORGE P. McLAUGHLIN.

Suffolk.    December 5, 1966. — March 9, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ

*Pleading, Criminal,* Bill of particulars.  *Practice, Criminal,* Access to witnesses; Continuance; Exceptions: whether error cured; Remark by judge; Argument by prosecutor.  *Evidence,* Relevancy and materiality, Firearm.  *Error,* Whether error cured.  *Homicide.  Words,* "Deliberately."

Upon an indictment for murder in the first degree in the statutory form, there was no abuse of discretion in refusing to compel the Commonwealth to specify in a bill of particulars which type of first degree murder under G. L. c. 265, § 1, the defendant was alleged to have committed. [222–223]

There was no error in the denial of a motion in a murder case for an order permitting the defendant's counsel to interview the principal witness for the Commonwealth, who was by his own choice in police custody, where it appeared at the hearing on the motion that the defendant's counsel had previously requested an interview with the witness, that the prosecutor had advised the witness that he could talk or refuse to talk with the defendant's counsel, that, at an arranged meeting of the witness and the defendant's counsel in the presence of the prosecutor, two police officers, and a stenographer, the prosecutor had asked the witness if he desired to talk with the defendant's counsel and the witness had replied "No, I have nothing to say" to him, and that then further questioning of the witness had not been permitted. [224]

There was no abuse of discretion in the denial of a motion for a continuance, filed in a murder case at the commencement of the trial more than a year and a half after the victim had been killed and the defendant charged with murder and a warrant for his arrest issued and about eight months after he was found and arrested, based on the ground that due to prejudicial publicity in news media it was impossible for the defendant to get a fair trial.    [225]

At the trial together of an indictment against a man for murder and indictments against a woman and others as accessories after the fact, where there was evidence that immediately after the victim had been shot the woman stated, but not in the murder defendant's presence, that he had "shot" someone, and the judge made it abundantly clear both during the trial and in his charge that the statement was admissible only against the woman, there was no error at the conclusion of the charge in refusing to give additional instructions requested by the murder defendant that the jury could not consider the statement with respect to the indictment against him.    [226]

Commonwealth *v.* McLaughlin.

The record as a whole of a protracted trial together of an indictment against one defendant for murder and indictments against other defendants as accessories after the fact, at which there were numerous needless interruptions and improper questions by all defence counsel and by the prosecutor and admonitory remarks to each of them by the judge and frequent bench conferences, did not support the murder defendant's contention that he was prejudiced by the judge's criticisms of his counsel in the presence of the jury upon several occasions.   [227–228]

At the trial together of an indictment against one defendant for murder and indictments against other defendants as accessories after the fact, there was no error prejudicial to the murder defendant in the judge's admonition to the jury, following a particularly needless interruption by a defence counsel other than the murder defendant's, to be "on the lookout for . . . tactics" of all counsel, including the prosecutor, of making objections for the purpose of "beclouding" the testimony or the issues, where the charge instructed the jury to decide the case solely on the basis of the actual testimony.   [228–229]

Where there was evidence at a trial for murder by shooting that the fatal wound was most likely caused by a .357 or .38 calibre bullet from a revolver, there was no error in the admission in evidence of three revolvers, of which two were of .38 calibre and two had been fired, found at the time of the defendant's arrest, about a year after the murder, in a bedroom in which he was arrested, semiclothed and with his shoes near the bed, and which, evidence indicated, he had occupied the night preceding his arrest.   [229–230]

Conviction upon an indictment for murder in the first degree was warranted where there was evidence that the defendant came out from a second floor apartment in which a party was breaking up, futilely ordered a group of young men on the landing outside to "clear the hallway," had an altercation with one of them and was thwarted in an attempt to grab a beer bottle, reached in his pocket but appeared not to find what he was looking for, went down to the first floor apartment of his female companion and entered it, and that shortly thereafter the defendant was arguing in the entranceway of the building with a guest who had left the party earlier, and suddenly pulled out a gun and shot him.   [230–231]

At a trial for murder where the principal witness for the Commonwealth testified only as to events which occurred on and after the day of the murder and there was testimony as to his sobriety at that time, there was no error in the exclusion of evidence that the witness had been drunk for several days prior to that day.   [231]

Remarks by the prosecutor in his closing argument at a murder trial, that he had done his "utmost as a representative of the Commonwealth to be fair" with the defendant and "with society," that the defendant had "put" himself "in the dock," and that the counsel for the defendant had asked questions incorporating facts without foundation in the evidence, were not so prejudicial as to require a reversal of the defendant's conviction in view of suggestions by the defendant's counsel that the prosecutor had acted less than fairly and of full and clarifying instructions of the judge.   [231–233]

INDICTMENT found and returned in the Superior Court on March 4, 1965.

Preliminary motions were heard by *Forte,* J., and the case was tried before him.

*F. Lee Bailey* (*Charles M. Burnim* with him) for the defendant.

*John A. Pino,* Assistant District Attorney (*James M. Kickham,* Legal Aid to the District Attorney, with him), for the Commonwealth.

SPALDING, J.    The defendant, George P. McLaughlin, was indicted for the murder of William J. Sheridan.    The indictment charged murder in the first degree.    He was tried jointly with James S. O'Toole, Maureen Dellamano, and Frances Bithoney, who were charged as accessories after the fact.    The jury returned a verdict of guilty.    The case, having been tried subject to G. L. c. 278, §§ 33A–33G, comes here on McLaughlin's appeal.

The evidence was as follows: On the evening of March 14, 1964, a party was held in a second floor apartment at 55 Yeoman Street, Roxbury.    Among the guests were McLaughlin and Sheridan.    McLaughlin was accompanied by the codefendant, Dellamano, who had an apartment on the first floor of the building.    Sheridan left the party sometime before midnight, after having had an argument with one of the guests.    Shortly after midnight, the tenants of the apartment attempted to break up the party and asked the guests to leave.    Several young men who would not leave were ejected, but they remained on the second floor landing.    McLaughlin came out from the apartment, told those on the landing to "clear the hallway," and had an altercation with one of them.    McLaughlin then went down the stairs, took a key from his pocket, opened the door to Dellamano's apartment, and entered.    At this time the persons on the second floor landing fled.    One of them, as he ran across the courtyard in front of the building, heard a shot and saw someone fall in the doorway.

Herbert Josselyn had been invited to the party at 55 Yeoman Street, but did not arrive there until shortly after

midnight. Upon arriving, he stood in front of the building talking to various persons who had been at the party. About 12:45 A.M. he saw two men standing in the doorway of the entrance to 55 Yeoman Street. One man had his back turned toward Josselyn. The other man, standing just inside the doorway, was identified by Josselyn as McLaughlin. Josselyn testified that the two men appeared to be arguing, and that the one identified as McLaughlin suddenly pulled out a pistol and shot the other. At the time, Josselyn was about twenty feet from the doorway. He immediately fled.

A policeman summoned to the scene found Sheridan lying in the doorway with blood spurting from a gunshot wound in his head. He was taken to a hospital where he was pronounced dead. A bullet, with traces of blood upon it, was found in the hallway. Although it was too distorted for making comparisons, a ballistics expert testified that it was probably .357 or .38 calibre. No weapon was found in the vicinity.

A complaint charging McLaughlin with murder was issued by the Municipal Court of the Roxbury District on March 16, 1964. On the same day, a fugitive warrant for his arrest was issued by the United States District Court for the District of Massachusetts. McLaughlin was not found until February 24, 1965, when F. B. I. agents arrested him at 24 Duke Street, Mattapan. He was found in a third story bedroom, partially dressed, in the company of the codefendant O'Toole. Three revolvers were found in the top drawer of a dresser in the bedroom.

McLaughlin's assignments of error relate to (1) the denial of several preliminary motions; (2) certain rulings on the admission of evidence; (3) certain remarks made by the judge and the prosecuting attorney; and (4) the denial of a motion for a directed verdict to so much of the indictment as charged murder in the first degree. Other evidence will be set forth as occasion requires.

1. The indictment was in the statutory form (G. L. c. 277, § 79), the relevant portions of which were: "McLaughlin,

on . . . [March 15, 1964] did assault and beat one . . .
Sheridan with intent to murder him, and by such assault
and beating did kill and murder the said . . . Sheridan.''
McLaughlin made a motion for a bill of particulars in which
he asked that the Commonwealth be ordered to specify the
place and time of the alleged crime, the means and manner
by which it was committed, and whether it was alleged to
have been committed with premeditation, with extreme cru-
elty and atrocity, or in connection with a crime punishable
by death or life imprisonment. The Commonwealth volun-
tarily answered that ''[t]he murder . . . was committed
. . . [at] 55 Yeoman Street, Roxbury . . . on March 15,
1964 between the hours of 12:00 A.M. and 2:00 A.M.,'' and
''that the defendant . . . armed himself with a loaded re-
volver and without provocation from the victim . . . shot
. . . Sheridan with the revolver. The bullet struck the vic-
tim . . . between the eyes and passed through . . . [his]
head . . ..'' The Commonwealth refused, however, to an-
swer which type of first degree murder was alleged. See
G. L. c. 265, § 1. The judge who heard McLaughlin's mo-
tion refused to compel the Commonwealth to answer that
question.

McLaughlin contends (assignment no. 6) that the denial
of his motion for particulars, in respect to which type of
first degree murder was alleged, constituted reversible er-
ror. We do not agree. The purpose of a bill of particu-
lars is ''to describe in more detail that which is included in
the allegations of an indictment in order that the defendant
may be fully informed of the nature of the charge and be
enabled to prepare an adequate defence.'' *Commonwealth
v. Ries,* 337 Mass. 565, 580–581. *Commonwealth* v. *Cor-
coran,* 348 Mass. 437, 441, and cases cited. G. L. c. 277,
§ 40. See art. 12 of the Declaration of Rights. The par-
ticulars voluntarily furnished by the Commonwealth were
such as to give McLaughlin ''reasonable knowledge of the
nature and grounds of the crime charged.'' G. L. c. 277,
§ 40. He was given all the particulars to which he was en-
titled as of right. *Commonwealth* v. *Chapin,* 333 Mass. 610,

617–618, and cases cited.   The ordering of any further particulars was within the discretion of the judge; there was no abuse of that discretion.   *Commonwealth* v. *Welansky,* 316 Mass. 383, 395–396, and cases cited.   *Commonwealth* v. *Binkiewicz,* 342 Mass. 740, 747, and cases cited.

2.   Josselyn, the principal witness for the Commonwealth, was by his own choice in police custody for several months prior to the trial.   In March of 1965 (several months before the trial) McLaughlin's counsel, having requested an interview with Josselyn, were afforded an opportunity to confer with him in a room in the court house. At the interview the prosecutor, two police officers, and a stenographer were also present.   The prosecutor introduced Josselyn to McLaughlin's attorneys.   After informing Josselyn that they represented McLaughlin and desired to talk with him, the prosecutor asked Josselyn if he wanted to talk to them.   Josselyn's reply was, ''No, I have nothing to say to them.''   McLaughlin's counsel then started to question Josselyn but was told by the prosecutor that since Josselyn did not wish to talk to them further questioning would not be permitted.

Subsequently McLaughlin made a motion in which he asserted that he had been unable to interview Josselyn and requested that an order be issued to permit such an interview.   At the hearing on this motion, the prosecutor stated that he had advised Josselyn that he could talk or refuse to talk with either representatives of the Commonwealth or those of the defence, and that Josselyn had indicated that he had no desire to talk with defence counsel outside of the court room.   The prosecutor then offered defence counsel an opportunity to speak with Josselyn provided a stenographer and two police officers were present during the interview.   Defence counsel stated that there was no ''objection if the stenographer were present . . . [but they saw no] need of the police officers' presence.''   The judge asked if they had any reason to doubt the prosecutor's statement to the effect that he had advised Josselyn that he could talk or remain silent as he saw fit.   Counsel stated that they had

no reason to doubt the statement. The judge thereupon denied the motion, subject to McLaughlin's exception. Assignment No. 8.

In *Commonwealth* v. *Balliro,* 349 Mass. 505, we said at page 516, that "counsel for a defendant should be accorded, as of right, an opportunity to interview prospective witnesses held in the custody of the Commonwealth. Witnesses belong neither to the Commonwealth nor to the defence . . . and should be available to both parties in the preparation of their cases." In the *Balliro* case, however, there was no showing that the witness had been advised that he could speak to defence counsel and had elected to remain silent; there the prosecutor simply refused defence counsel permission to interview. The holding of that case was directed at the actions of the prosecutor. Here it is conceded that the prosecutor had fully informed Josselyn of his right to talk or remain silent. Yet he stated in the presence of McLaughlin's counsel that he did not wish to speak with them. Josselyn could not be compelled to talk if he did not want to. The judge, in view of the representations concerning Josselyn's refusal to talk after having been advised of his freedom to talk to defence counsel — and the representations were not challenged — could very well have concluded that the ordering of a further interview would be futile. There was no error. See *Wilkerson* v. *State,* 57 S. W. 956, 958 (Tex. Cr.). Since Josselyn did not want to submit to an interview, we need not decide whether, if he had submitted, the Commonwealth's position that it must be conducted in the presence of the police officers and the stenographer would be upheld. Compare *Gregory* v. *United States,* 369 F. 2d 185, 187–188 (Ct. App. D. C.).

3. In April of 1965 both the Commonwealth and McLaughlin moved for the setting of a date for trial. The date asked for by the Commonwealth was June 8. McLaughlin's motion that the trial commence in October was allowed. On October 5, the day when the trial was to commence, McLaughlin filed a motion for a continuance. The basis of the motion was that due to prejudicial publicity in

news media it was impossible for McLaughlin to get a fair trial unless a continuance was granted. The motion, after hearing, was denied subject to McLaughlin's exception. Assignment No. 9.

Public interest must be expected to focus both upon the homicide and upon the arrest of a person who was a fugitive for nearly a year. See *Commonwealth* v. *Millen,* 289 Mass. 441, 464–465; *Commonwealth* v. *Geagan,* 339 Mass. 487, 500–501. But the existence of such public interest in a crime cannot forever delay or prevent the Commonwealth from bringing to trial those charged with its commission. See *Commonwealth* v. *Geagan, supra,* at p. 501. Otherwise, the greater the crime, with its attendant publicity, the greater the probability of its being tried when witnesses may be ''unavailable . . . [or] their memories dulled.'' *Commonwealth* v. *Hanley,* 337 Mass. 384, 387. *Commonwealth* v. *McGrath,* 348 Mass. 748, 753. McLaughlin was tried more than a year and a half after Sheridan was killed and about eight months after he was arrested. This lapse of time was sufficient for an inflamed public opinion, if such there was, to have subsided. The empanelling of the jury was conducted with great care pursuant to G. L. c. 234, § 28. From an examination of the transcript we find no indication that McLaughlin was tried before a prejudiced jury. We perceive no abuse of discretion in the denial of the motion for a continuance. *Commonwealth* v. *Geagan,* 339 Mass. 487, 502.

4. Assignments 10 and 19 are closely related and will be considered together. Three witnesses testified that immediately after Sheridan was shot Dellamano came into the apartment where the party had been held and said, ''George shot someone.'' The first witness to so testify was Bernard Flaherty. When this evidence came in McLaughlin's counsel asked for an instruction that it was not admissible against McLaughlin. The judge said, ''I am not ready to say that. This is all part of the res gestae.'' No exception was taken. Thomas Barry also testified that shortly after he had heard a ''loud bang'' Dellamano came running

through the door and said "George shot somebody." Subject to exception this evidence was admitted de bene against McLaughlin. (Assignment No. 10) The third witness to testify to the Dellamano remark was Donald Buckley. On this occasion both the prosecutor and counsel for McLaughlin asked that the testimony be admitted only against the codefendant Dellamano. The judge acceded to this request and instructed the jury as follows: "I am going to admit this statement . . . only as against the defendant Maureen Dellamano and against no other defendant. . . . Anything that is said or done not in the presence of a defendant is not admissible against him. The only one present when this statement allegedly was made was Maureen Dellamano. Therefore, it is admissible only against her."

In his charge the judge called the jury's attention to the Dellamano remark and said, "I admitted it only against Maureen Dellamano and it can be considered only in the indictment against her. . . . The other defendants were not present when . . . [she] made that statement. Therefore, you consider that evidence only against her." Despite these instructions, counsel for McLaughlin at the conclusion of the charge asked that the jury be instructed that they could not consider the Dellamano statement in the indictment against McLaughlin. Stating that he had sufficiently covered this point, the judge refused to give the additional instructions, subject to McLaughlin's exception. Assignment No. 19.

McLaughlin contends that the admission of the Dellamano remark was error and that the error was not cured by the judge's instructions. We disagree. The judge made it abundantly clear both during the trial and in his charge that the remark was admissible only against Dellamano. In view of the limitation on this evidence, we need not consider whether it might have been admissible against McLaughlin under the exception to the hearsay rule which admits spontaneous declarations. See *Commonwealth* v. *Hampton,* 351 Mass. 447.

5.   There were several occasions upon which the judge

criticised McLaughlin's attorney in the presence of the jury.[1] The criticisms were usually directed at needless or frivolous objections (''You love to interrupt the witness in the middle of a story so he'll break his chain of thought, so you'll create confusion, so the jury won't follow'') or improper questions (''You like to slip in things that you know should not be put in. . . . [Y]ou have no right to hit below the belt''). There were exceptions to some of these criticisms. McLaughlin contends that the judge's remarks prejudiced him and constituted reversible error. Assignment No. 21.

During the fifteen days of trial, there were numerous needless interruptions and improper questions, not only by McLaughlin's attorney but by three other defence counsel and by the prosecutor. It was the judge's duty, as ''the directing and controlling mind at the trial,'' to see that the trial did not get out of hand. *Whitney* v. *Wellesley & Boston St. Ry.* 197 Mass. 495, 502. *Commonwealth* v. *Lewis,* 346 Mass. 373, 379. His remarks were not unprovoked. Generally, of course, it is the better practice to warn and rebuke counsel out of the jury's hearing. There were numerous bench conferences, and it cannot be said that he did not attempt to prevent counsel's improper interruptions and questions upon those occasions. Some warnings and rebukes must unavoidably be made in the jury's presence. See *Commonwealth* v. *Lewis, supra,* at 379. The judge's remarks were not inappropriate when considered in relation to the length and circumstances of the trial. They were not confined to McLaughlin's attorney, but were directed upon various occasions to each counsel, including the prosecutor. Furthermore, there were other occasions when the judge praised McLaughlin's attorney for the zeal with which he defended his client. In his charge, the judge said, ''[T]his has been an arduous case. I think because of the zeal . . . of counsel. If any of them . . . [were] my attorney I would be very proud of . . . [him]. Each left no

---

[1] McLaughlin's trial counsel did not argue the appeal in this court.

stone unturned to bring out everything in favor of his client, and too often went further than his duty required. . . . I had to be stern at times. . . . I must compliment the attorneys for doing the job the best they knew how to do." The judge also charged, "And I told you at the beginning of the trial that if you got any hint whatsoever as to what I thought . . . divorce that hint from your mind." We are of opinion that the record as a whole does not support McLaughlin's contention that he was improperly prejudiced by the judge's remarks.

6. Upon one occasion, after one of the defence attorneys (not McLaughlin's attorney) had made a particularly needless interruption, the judge made the following statement: "We have four counsel here and the district attorney, and one or more will object for one reason or another. I want to apprise the jury to watch the objections for interruptions of the testimony rather than to ascertain the truth and get all of the testimony. Now, if any counsel does that for the purpose of beclouding the testimony, then that should be held against him. . . . I am talking generally. And I am not charging you with that. I am keeping the jury on the lookout for such tactics, on the excuse that counsel is protecting the rights of his client. I am not addressing you personally. I have the highest regard for you. Don't worry about that."

McLaughlin's attorney excepted to these remarks. When pressed for his reasons for the exception, he asserted that the district attorney should have been included in the judge's remarks. The judge then said: "I do mean all counsel. What I said applies to all counsel. At one time, I said four counsel. I think there are five counsel. Now, if the district attorney wants to becloud the issues, I will tell the jury that is a sign of weakness, because what I said applies to all counsel."

McLaughlin contends that these remarks were prejudicial and constitute reversible error. Assignment No. 11. This contention cannot prevail. The objection made to these remarks was based on the attorney's impression that the

district attorney had not been included.[2]  The judge immediately made it clear that the district attorney was included.

Even though McLaughlin saved no exception to these remarks other than relates to the inclusion of the district attorney (*Commonwealth* v. *Geagan,* 339 Mass. 487, 515), we nevertheless have considered whether they were prejudicial. The rules of evidence, of course, are not matters that a jury can be expected to know and they are in no position to determine the merits of objections.  Those are questions for the court.  Thus it has been held that a refusal to answer interrogatories until ordered to do so by the court was not a matter from which the jury could draw an inference.  *Minihan* v. *Boston Elev. Ry.* 197 Mass. 367, 372.  *Harrington* v. *Boston Elev. Ry.* 214 Mass. 563, 567.  But the remarks were directed at all counsel, including the district attorney.  A reading of the entire charge reveals that the jury were told that they were to decide the case solely on the basis of the actual testimony.  We are of opinion that there was no prejudicial error.

7.  The Commonwealth, subject to McLaughlin's exception, was permitted to introduce in evidence the three revolvers which were found in the bedroom where he was arrested.  McLaughlin argues that this evidence was irrelevant and was highly prejudicial because it portrayed him as a bad man who would be likely to have committed the crime charged.  Assignment No. 12.  It is further argued that there was no evidence that McLaughlin ever occupied the room where the revolvers were found.  McLaughlin at the time of his arrest was semiclothed.  His shoes were near the bed.  There was evidence that he had occupied the bedroom during the night preceding his arrest.  From this evidence the jury could infer that the revolvers were under his control.  See *Commonwealth* v. *Retkovitz,* 222 Mass. 245, 249.

Weapons found in the possession of a defendant at the time of his arrest are commonly held to be admissible if they might have been used in the commission of the crime

---

[2] As the quoted remarks show, the district attorney was in fact included in the initial statement.

charged, even though there is no direct proof that the weapons were in fact those used. *Commonwealth* v. *O'Toole,* 326 Mass. 35, 39. *Banning* v. *United States,* 130 F. 2d 330, 335–336 (6th Cir.). *People* v. *Riser,* 47 Cal. 2d 566, 577. See *Commonwealth* v. *Williams,* 2 Cush. 582, 585–586; *Commonwealth* v. *Noxon,* 319 Mass. 495, 539–540. The fatal wound was most likely caused by a .357 or .38 calibre bullet, according to the testimony of a ballistics expert. Of the three revolvers admitted, two appear to be .38 calibre; the calibre of the other is not shown.[3] The ballistics expert testified that two of the guns showed indications of having been fired. Thus two of the guns were capable of firing the fatal shot and were properly admitted. *Commonwealth* v. *O'Toole,* 326 Mass. 35, 39. In these circumstances the admission of the third gun, which had not previously been fired, did not prejudice the defendant. It added little to the jury's knowledge gained from evidence correctly admitted. *Commonwealth* v. *Williams,* 2 Cush. 582, 585–586. *People* v. *Riser,* 47 Cal. 2d 566, 577–578.

8. McLaughlin assigns as error (assignment No. 13) the denial of his motion for a directed verdict of not guilty of murder in the first degree. The motion was rightly denied. The word "deliberately" in the expression "deliberately premeditated malice aforethought" has reference to the prior formation of a purpose to kill rather than to any definite length of time. "[I]n view of the quickness with which the mind may act, the law cannot set any limit to the time. It may be a matter of days, hours, or even seconds. It is not so much a matter of time as of logical sequence. First the deliberation and premeditation, then the resolution to kill, and lastly the killing in pursuance of the resolution; and all this may occur in a few seconds." *Commonwealth* v. *Tucker,* 189 Mass. 457, 494–495. *Commonwealth* v. *Brooks,* 308 Mass. 367, 369.

There was evidence that McLaughlin had an altercation

---

[3] The transcript does not reveal the calibre of any of the revolvers. But they are before us and two of them, according to markings on their barrels, are .38 calibre.

with one of a group of young men on the second floor land-
ing shortly before the killing. None of the group had
obeyed his order to "clear the hallway." He was thwarted
in an attempt to grab a beer bottle. He reached in his
pocket, appeared not to find what he was looking for, and
went down to the apartment on the first floor. Shortly
thereafter he was arguing with Sheridan in the entrance-
way of the building. Then, according to the witness Jos-
selyn, he suddenly pulled out a gun and shot Sheridan.
The jury could have found that at some point in the se-
quence of events which preceded his pulling out the gun and
shooting, he had resolved upon a purpose to kill.

9. Janice Josselyn, the sister of Herbert Josselyn, the
Commonwealth's principal witness, was called by McLaugh-
lin. After having testified that she had not seen her
brother on March 14 (the day of the party), she was asked
whether he had been drinking prior to that day. The ques-
tion was excluded and McLaughlin excepted. Assignment
No. 14. Counsel for McLaughlin made an offer of proof
that she would testify that her brother had been drunk for
two or three days prior to March 14. Whether Herbert
was sober on the days prior to March 14 was irrelevant.
He testified only as to events which occurred on March 14
and thereafter. His condition as to sobriety at that time
was gone into at considerable length. There was no error.

10. Assignments of error 15–18 concern remarks made
by the district attorney in his closing argument. McLaugh-
lin contends that the remarks were improper, and that,
when considered as a whole, the closing argument was so
prejudicial as to require reversal.

The first of the remarks to which McLaughlin directs our
attention occurred just after the district attorney had given
a brief sketch of his professional background. "I was,"
he said, "administered the oath by the Secretary of . . .
[the] Commonwealth. And among the things that oath
called upon me to carry out is to seek the ends of justice not
only for the people of this Commonwealth but justice for
the defendant." "I respectfully submit . . . that I have
done the utmost as a representative of the Commonwealth

to be fair with the defendants and to be fair with society.''
We perceive nothing improper in these remarks. A dis-
trict attorney is charged with ''secur[ing] a fair trial to
the accused.'' *Smith* v. *Commonwealth*, 331 Mass. 585,
591–593. Furthermore, on several occasions McLaughlin's
attorney suggested that the district attorney had acted less
than fairly. McLaughlin may not now complain that the
district attorney responded in an attempt to counter these
suggestions. See *Commonwealth* v. *Smith*, 342 Mass. 180,
186.

The district attorney also said, ''I submit that I didn't
put those defendants in the dock. His Honor didn't put
them in the dock. The grand jury did not put them in the
dock. They put themselves there.'' These remarks had
best been left unsaid. Considered alone, they might give
rise to an adverse inference from the sole fact that
McLaughlin had been placed on trial. But again, in view
of the suggestions of unfairness by McLaughlin's attorney,
this appears to be ''an attempt to fight fire with fire.'' See
*Commonwealth* v. *Smith*, 342 Mass. 180, 186. In any event,
the jury were fully instructed by the judge, both in his pre-
liminary remarks and in his charge, that the fact that
McLaughlin had been indicted had no bearing upon his
guilt.

The last remark which we specifically consider was made
near the close of the district attorney's summation.
''Throughout this trial'' he said, ''the government has had
to contend with three witnesses who were not even sworn to
testify. It's for you to say what happened.'' He then
proceeded to recite a number of instances in which the at-
torneys for three of the defendants had asked questions
incorporating facts which had no foundation in the evidence
either then or later. It appears from the context that the
district attorney was not commenting upon the silence of
the three defendants. If, as seems unlikely, there was any
confusion on this point, it was clarified in the judge's
charge.

McLaughlin also directs our attention to several other
remarks of the district attorney. It would prolong this

opinion to no purpose to discuss them.   Having considered them, we do not believe that the remarks, considered in the context of the entire trial, require reversal.

11.   In accordance with our duty under G. L. c. 278, § 33E, as amended through St. 1962, c. 453, we have reviewed the entire evidence and are of opinion that justice does not require a new trial.

*Judgment affirmed.*