Agnes, A.J.
INTRODUCTION
The defendant was tried before a juiy on January 28-29, 2002 and convicted of unlawful possession of *464 a firearm, discharging a firearm within 500 feet of a building, unlawful possession of ammunition, and assault and battery by means of a dangerous weapon. At the close of the Commonwealth’s case, the court (Donahue, J.) allowed motions for a directed finding of not guilty on two additional counts of the indictment charging him with failing to properly secure firearms. The defendant was sentenced to a term of 6-10 years in state prison on the assault and battery by means of a dangerous weapon charge and current sentences to the house of correction on the firearm and ammunition charges. The charge of unlawfully discharging a weapon was filed with his consent. The defendant has filed a motion for a new trial pursuant to Mass.R.Crim.P. 30. The defendant’s principal claim is that he was deprived of the effective assistance of counsel during the pretrial stages and at his trial.
The defendant has filed a notice of appeal and acted in a timely manner to process his appeal, but has agreed to delay entry of the case in the Appeals Court pending the outcome of his motion for a new trial.
BACKGROUND
The basic facts relating to the defendant’s motion are not in dispute. In this case, the court and counsel have had the benefit of a transcript of the trial proceedings as well as a transcript of the Grand Jury proceedings. The court has reviewed the transcript of the Grand Jury minutes, the Motion To Suppress Evidence Hearing, and the Trial in their entirety. The facts are set forth in detail in the comprehensive briefs filed by the parties. A brief statement of the salient facts is necessary to frame the legal issues raised by the defendant’s motion. Where appropriate, specific references are made to these various transcripts.
A. The Commonwealth’s Case at Trial
The Commonwealth’s case at trial was based on the testimony of several witnesses and physical evidence. Worcester Police Officers Murphy and Kachadoorin were working the 4-12 p.m. shift on February 22, 2001 when they was dispatched to Glenwood Avenue for a “shooting.” Officer Kachadoorin was directed to the victim, Glen Swiniarski, by a civilian, Skip Collins. The victim was bleeding as he lay on the floor at 8 Glen-wood Avenue. Medical assistance arrived shortly thereafter. The officers were then led across the street to #8 Glenwood where they saw a man, later identified as the defendant, David Moquin, standing in his bathrobe inside his home and holding a nickel-plated revolver in his hand. Officer Murphy asked him to put the gun down and the defendant complied. The defendant denied shooting the victim. The defendant was asked if there were other weapons in the house. He replied in the affirmative, stating thát there was a pistol and some rifles upstairs in a bedroom, that the weapons were legitimate and belonged to his wife (Trial Tr. vol. I at 140), and that the police could go up and get them.
The police went upstairs and recovered several weapons from what appeared to be the adult’s bedroom. There was a children’s room in which the defendant’s young children were present. Meanwhile the defendant’s wife arrived home. The case was tried on the assumption that the defendant’s wife owned the firearms, and that she was licensed to possess them. (See Trial Tr. vol. I at 37 [Defense opening], vol. I at 51 & 140-44; vol. II 2 at 10.) During this initial encounter with the police, the defendant told the police a story of how he shot the victim in self-defense as a result of an altercation between the two over the victim’s refusal to pay the defendant for a transmission that the defendant obtained for the victim’s vehicle. (Trial Tr. vol. I at 49 to 51.) The defendant stated that while arguing with the victim outside his home, provocative and threatening words were exchanged, the victim suddenly rushed him, he removed the revolver which he had in his bathrobe pocket, and shot the victim in the abdomen during the struggle. The government offered evidence that the defendant had no license to carry and no Firearm Identification Card for firearms or ammunition. (Trial Tr. vol. I at 59-60.)
The Commonwealth’s case also included testimony of the victim, Glen Swiniarski. He is over six feet tall and weighs about 270 pounds. The defendant, by contrast, looked sick. He testified that he and the defendant were neighbors. In the past, the defendant had done repair work for him on his motor vehicles. They had a discussion about the defendant obtaining a transmission for the victim’s Dodge truck. On the day in question, the victim testified that he entered the defendant’s home at the defendant’s invitation. There, a disagreement ensued over the cost of the transmission purchased by the defendant. After an exchange of words, the victim left and returned to his home. The defendant allegedly came out from his home and said words to the effect that he would put a bullet in the victim’s head. Upon hearing this, the victim returned to the defendant’s porch. When he asked the defendant what was wrong, the defendant shot him in the abdomen. He managed to get back to his house where he dialed 911. When he reported the incident to the police he stated that he didn’t know who shot him.
The Commonwealth also presented the testimony of Worcester Police Officer Joseph Tanona who recovered the weapons from the upstairs bedroom and the downstairs basement area. These included a Ruger .45 caliber handgun, a .22 caliber Savage Mach II rifle, a Bingham Model 20 long rifle, and an Egyptian Hakik 9 millimeter sniper rifle. These firearms were not in a locked case. They were received into evidence without any objection. See Trial Tr. vol. I at 143-52.
B. Motion Hearing at the Close of the Commonwealth’s Case
After the Commonwealth rested, the court sua sponte raised a concern about the charges relating to the defendant’s failure to secure firearms that did not *465 belong to him. The court concluded that the statute in question did not apply to the defendant and ordered that findings of not guilty be directed in favor of the defendants. See Trial Tr. vol. I at 157-63. After the jury was excused, the court invited defense counsel to submit a proposed instruction to explain why two of the charges had been dismissed. (Trial Tr. vol. I at 165.) No such instruction was submitted or given to the jury.
C.The Defendant’s Case at Trial
The defendant offered testimony from his wife, his son, his mother, and a tenant. The defendant’s wife testified that her husband was home on the day in question recovering from pneumonia. She testified that all of the guns found by the police, including the handgun used by the defendant, belonged to her, and that she had grown up around guns. She said she kept guns at home for her protection because she operated a business out of her house. There was pointed cross-examination by the prosecutor about the various guns found in her home, the fact that they were loaded, that one may not have had a serial number on it, and whether they were needed for her business. (Trial Tr. vol. II at 5-10.) The defendant’s son testified that he heard the defendant and the victim arguing about the transmission, that the victim pushed his way into the defendant’s home, and that his father pulled the gun out and shot the victim as the victim was choking him. A similar exculpatory account was provided by the defendant’s tenant Arthur Collins. The defendant’s mother testified that on the day in question, her son was very sick and in a weakened condition.
D.Closing Arguments
In his closing argument for the defendant, counsel focused on the theory of self-defense. In their closing arguments, neither the defense counsel nor the prosecutor made any reference to the other guns that were found in the defendant’s upstairs bedroom and basement.
E.Judge’s Charge
In his instructions to the jury, the trial judge told them they could consider all of the exhibits and give them “whatever consideration you deem appropriate.” Trial Tr. vol. II at 106.
DISCUSSION
A. Ineffective Assistance Claim Relating to the Improper Admission of Evidence of Other Guns
A trial judge may grant a motion for new trial only “if it appears that justice may not have been done.” Mass.R.Crim.P. 30(b). The proper determination of a motion for a new trial in a criminal case is committed to the discretion of the judge. See Commonwealth v. Moore, 408 Mass. 117, 125 (1990); Commonwealth v. Smith, 381 Mass. 141, 142 (1980).
The test for determining a claim of ineffective assistance of counsel is the familiar two-part test from Commonwealth v. Sefarian, 366 Mass. 89, 96 (1974), whereby the defendant must establish that (1) there was a serious incompetency of trial counsel, i.e., “behavior of counsel falling measurably below that of the ordinary fallible lawyer,” and (2) that this incompetency “likely deprived the defendant of an otherwise available, substantial ground of defense.” See Commonwealth v. Urena, 417 Mass. 692, 696 (1994).
In this case, there is no question that the defendant has established the first prong of the two-part test. Trial counsel should have moved to dismiss the firearm storage charges before trial. Trial counsel should have objected to the admission of the evidence at trial. Trial counsel should have sought a curative instruction.[1] Only as a result of the alertness of the trial judge did the matter even occur to trial counsel. Evidence of the presence of loaded firearms belonging to the defendant’s wife had no relevance to any live issue in the case.
The second question is whether the defendant suffered material harm as a result of his trial counsel’s errors. “(T]he defendant must show that the error weakened his case in some significant way so as to require a new trial.” Commonwealth v. Schultz, 389 Mass. 735, 741 (1983). In Schultze, the defendant was tried for an attempted armed robbery. He relied on an insanity defense. He offered expert psychiatric opinion testimony that he was suffering from acute toxic syndrome at the time of the crimes due to his drug addiction and drug use. The trial judge excluded testimony from a physician who had seen the defendant 4 days and 10 days before the crimes and who would have described his observations, diagnosis and treatment of the defendant, all of which Would have corroborated the other evidence in the defendant’s case. The Supreme Judicial Court reversed the defendant’s conviction and ordered a new trial because “in all fairness” it believed the jury would have regarded the evidence as significant. Id, 389 Mass, at 742.
In the present case, the question becomes how significant was the erroneously admitted evidence that there were several other loaded guns and rifles kept in the home. There certainly are occasions when it is appropriate to admit multiple firearms against a person on trial for crimes involving the use of a weapon when there is reason to believe that the weapons introduced in evidence could have been used in the commission of the crime. See, e.g., Commonwealth v. O’Toole, 326 Mass. 35, 39 (1950). But when evidence of multiple firearms are admitted which have nothing to do with the charges against the defendant it is error. Commonwealth v. Toro, 395 Mass. 354, 358 (1985).
The question is whether as a result of the error, the defendant suffered any material prejudice. In Commonwealth v. McLaughlin, 352 Mass. 218, 229-30 (1967), an improperly admitted handgun was not regarded as prejudicial error in light of the proper admission of two other handguns either of which could *466 have been the murder weapon. “It added little to the jury’s knowledge gained from evidence correctly admitted.” Id. at 230. In Commonwealth v. Toro, supra, the court reached a similar result to that in McLaughlin because both the Commonwealth’s case and the defense case depicted the defendant as a cocaine dealer who had been arrested and incarcerated in the past, carried weapons at times, and had no legitimate means of support. Id. at 358. Likewise, in Commonwealth v. Graham, 431 Mass. 282 (2000), the Supreme Judicial Court held that the erroneous admission of several crossbows in a “road rage” case in which the defendant was charged with the murder of another by means of a crossbow he removed from the trunk of his car was not prejudicial because,
there was abundant evidence that the defendant was an archery enthusiast. In addition to the testimony and photographs discussed supra, the defendant himself testified that he had been involved with archery since he was thirteen years of age, that he owned five crossbows, and had a target in his backyard. Both the defendant and his wife testified that he would bring crossbows with him on camping trips. Moreover, in his opening, defense counsel said that the defendant had been involved in archery for forty-five years. In this context, we can say that the presence of the crossbows in the courtroom did not substantially sway the outcome.
Id. at 287-88.
The circumstances in the present case are quite different from those in McLaughlin, Toro, and Graham It does not require much imagination to conclude that a jury might be influenced to consider the defendant was an aggressive person with a predisposition to violence and the use of firearms by his ready access to loaded and unsecured handguns and rifles (including one described as a “Sniper Rifle”) in his basement and bedroom. The impression created by such evidence is qualitatively different from the impression created by the defendant’s possession of a single handgun, especially where it would have been described as one registered and licensed to his wife. See Commonwealth v. Prashaw, 57 Mass.App.Ct. 19, 26-27 (2003). See Commonwealth v. Benitez, 37 Mass.App.Ct. 722 (1994).
The Supreme Judicial Court has stated that “evidence of weapons unrelated to the commission of the crime under consideration may in some circumstances be prejudicial . . .’’ Commonwealth v. West, 357 Mass. 245, 248 (1970). This is such a case. Just as in Commonwealth v. Barrett, 3 Mass.App.Ct. 8,17-18 (1975), a murder case reversed on appeal in which at trial there was a self defense claim and the defendant was improperly impeached with three prior criminal convictions in which he was not represented by counsel, “[t]he assault and battery convictions indicated a predisposition to violence of the same general nature, though different in degree, as the crime with which the defendant was charged. They clearly struck at the credibility of the defense and contributed to the Commonwealth’s contention.” Contrast, Commonwealth v. Leate, 361 Mass. 347, 351 (1972) (improperly admitted “bad character” evidence merely cumulative of other evidence already in the case). This is not a case in which an order for a new trial can be avoided based on the doctrine that the conscious tactical decisions by trial counsel, unless shown to be manifestly unreasonable, are not a basis for a new trial. See, e.g., Commonwealth v. White, 409 Mass. 266, 272-273 (1991); Commonwealth v. Adams, 374 Mass. 722, 728 (1978).
B. Other Grounds for Relief
The defendant raises other grounds in support of his motion for a new trial which do not require extensive discussion. The so called juror misconduct issue (Defendant’s Motion and Memorandum at 10-13) does not rise to the level of an extraneous influence problem like the problem considered in Commonwealth v. Fidler, 377 Mass. 192 (1979), and later cases. There is no basis for the assertion that the juror in question either was aware that the defendant was the son of the Robert Moquin he presumably knew, and no basis for the assumption that this juror harbored any bias against the defendant.
The defendant maintains that defense counsel was ineffective by not calling witnesses who could have testified to the victim’s general reputation for quarrelsomeness and should have cross-examined the victim about specific instances of violent behavior. There was evidence presented to the grand jury that pointed to this reputation. See Grand Jury tr. at 17. The defendant’s argument on this point is sound because the credibility of the defendant and the victim as to which was the aggressor in the fight was the central issue in the case. See Defendant’s brief at 20-23.
The defendant is not correct in his argument that trial counsel should have objected to the admission of testimony by officer Kachadoorian of the defendant’s statement that he did not shoot the victim because that was not a simple denial of guilt. Contrast Commonwealth v. Henry, 37 Mass.App.Ct. 429, 432-33 (1994).
The defendant, however, is correct that trial counsel should have objected or moved to strike the victim’s testimony that the defendant had been having a problem with drugs. See Defendant’s Memorandum at 25.
ORDER
For the above reasons, a new trial should be granted because the defendant did not receive the effective assistance of counsel to which he was entitled under both state and federal law. Trial counsel should have taken mesures before and during the trial to keep highly prejudicial evidence relating to guns other than the one allegedly used in the case out of evidence. Trial counsel’s ineffectiveness in this case resulted in *467 material prejudice to the defendant because it significantly weakened his self-defense by presenting him as a person with violent propensities to a far greater degree than would have been the case without the erroneously admitted evidence. This combined with other failures by trial counsel leads the court to conclude that justice was not done. Accordingly, the defendant’s motion for a new trial is ALLOWED.
The defendant is to be held without bail unless and until he files a motion before this court to be admitted to bail pending a new trial or an appeal by the Commonwealth from this order. Such a motion shall be heard and decided in the regular course.

“We presume, as we must, that a jury understands and follows limiting instructions.” Commonwealth v. Jackson, 384 Mass. 572, 579 (1981).